No. 102,411

In the Matter of WILLIAM J. HUNSAKER, *Respondent*.

(217 P.3d 962)

Opinion filed October 9, 2009.

*Alexander Walczak*, deputy disciplinary administrator, argued the cause and *Stanton A. Hazlett*, Disciplinary Administrator, was with him on the formal complaint for the petitioner.

*Brock R. Snyder*, of Law Office of Brock R. Snyder, of Topeka, argued the cause for respondent.

*Per Curiam*: This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, William J. Hunsaker, of Wheat Ridge, Colorado, an attorney admitted to the practice of law in Colorado and in Kansas in 1965.

On September 23, 2008, the office of the Disciplinary Administrator in Kansas filed a formal complaint against the respondent alleging a violation of the Kansas Rules of Professional Conduct (KRPC). On October 14, 2008, the respondent filed an answer to the formal complaint. A hearing was held on the complaint before a panel of the Kansas Board for Discipline of Attorneys on January 21, 2009, where the respondent was both personally present and represented by counsel. The hearing panel determined that respondent violated KRPC 8.4(d) (2008 Kan. Ct. R. Annot. 586) (misconduct). Upon conclusion of the hearing, the panel made the following findings of fact and conclusions of law, together with its recommendation to this court:

"FINDINGS OF FACT

. . . .

"2.   On January 14, 2008, the Respondent entered into a Stipulation, Agreement and Affidavit Containing the Respondent's Conditional Admission of Misconduct with the Colorado Regulation Counsel. The Respondent stipulated to the following facts:

'a.   Respondent has a son, William Hunsaker, Jr. ('Billy'), who was a lawyer licensed in Colorado.

'b.   In June 2003, the Larimer County DA's office filed charges against Billy including two counts of sexual assault on a child and two counts of conspiracy to commit sexual assault on a child. Later in September 2003, two additional charges of assault on a child were added.

'c. Billy was arrested, and on June 20, 2003, respondent and his wife (Billy's mother) posted a property bond in the amount of $350,000.00 to assure their son's appearance.

'd. On August 18, 2004, Billy appeared in court at a setting along with his attorney. At that hearing Billy's bond was continued until the trial setting of September 13, 2004.

'e. Shortly before the date of the trial setting, Billy took certain actions all with respondent's knowledge and consent.

'f. On August 27, 2004, respondent was added as a signatory on Billy's checking at US Bank. There were then only two signatories on that checking account, Billy and respondent, his father.

'g. Billy transferred his home in Highlands Ranch to respondent.

'h. Billy also transferred the title to his Chevrolet Corvette to respondent.

'i. On September 9, 2004, both counsel for Billy appeared before the court, and moved to withdraw. The court denied their Motions to Withdraw. The court vacated the trial date of September 13, 2004, but still ordered that Billy's bond was returnable on that date.

'j. On Friday, September 10, 2004, respondent deposited $3,000.00 of respondent's own money into his son's checking account, according to respondent, to provide funds for automatic withdrawals.

'k. Billy failed to appear on Monday, September 13, 2004, and on that same day a warrant was issued for his arrest.

'l. Respondent first learned that his son had not appeared on that same day, September 13, 2004, when Wheat Ridge Police officers showed up in his office to ask where Billy was.

'm. On September 15, 2004, respondent personally went to the US Bank where Billy's bank account was and deposited a check for $1,833.82, drawn on respondent's office, according to respondent, to provide funds to cover automatic withdrawals.

'n. Respondent claims these funds were owed to Billy for work performed by Billy while working for respondent's law firm.

'o. Various withdrawals from Billy's checking account were made by an ATM card. Beginning on about September 20, 2004, ATM withdrawals were made on Billy's checking account from Mexico. The last ATM withdrawal from Mexico was about 4 days later. On about September 27, 2004, an ATM withdrawal on Billy's account was made from Guatemala.

'p. There were subsequent withdrawals and transactions with that card accessing Billy's checking account from Guatemala until about December 2, 2004.

'q. Respondent looked at monthly bank statements and knew about ATM withdrawals from Mexico. Further, respondent assumed at some point that Billy was making these withdrawals.

'r. On September 27, 2004, respondent deposited $9,000.00 into his son's checking account. Respondent made this payment from his own funds into his son's account. Respondent stated that this was an advance made into Billy's checking account from proceeds that would be gained on the sale of Billy's Corvette.

's. Respondent deposited three checks each in the amount of $1,833.00 into Billy's checking account on October 4, October 18, and October 29, 2004. Respondent claims these funds were owed to Billy for work performed by Billy at respondent's law firm.

't. Respondent sold his son's Corvette for $15,000.00 and on November 17, 2004, respondent deposited $6,000.00 by a cashiers check into his son's checking account. Respondent reimbursed himself for the $9,000.00 advance to Bill's [sic] checking account.

'u. Respondent listed his son's house for sale and the sale closed on November 19, 2004. On December 1, 2004, respondent deposited almost $6,000.00 from that sale into his son's checking account. The balance of $90,000.00 from the sale was used to reimburse respondent for funds loaned by respondent and his 401K plan secured by second and third mortgages on the house.

'v. The activity in Billy's checking account slowed down after December 2, 2004. The last ATM withdrawal was on that date.

'w. Billy was arrested in Costa Rica in March 2005 and extradited to Larimer County. In 2005 Billy was convicted of various felonies including sexual assault on a child. He was disbarred effective July 2005.

'x. Respondent closed Billy's checking account on March 24, 2005.

'y. In summary, after September 13, 2004, when Billy failed to appear at his trial, respondent deposited about $34,000.00 into his son's checking account.

'z. All ATM withdrawals from the account were from Mexico, Guatemala and perhaps Costa Rica and amounted to almost $19,000.00.

'aa. Through the respondent's conduct described above, the respondent has engaged in conduct constituting grounds for the imposition of discipline pursuant to C.R.C.P. 251.5. The Respondent has also violated Colo. RPC Colo RPC 8.4(d) (engaged in conduct prejudicial to the administration of justice).'

"3. The Respondent also agreed to a 90 day suspension. The Respondent's stipulation was conditioned upon the Presiding Disciplinary Judge accepting the recommended discipline.

"4. On January 15, 2008, the Presiding Disciplinary Judge accepted the Respondent's stipulation and the recommendation regarding discipline. The Respondent's license to practice law in Colorado was suspended for 90 days beginning January 20, 2008.

## "CONCLUSIONS OF LAW

"1.  Based upon the findings of fact, the Hearing Panel concludes as a matter of law that the Respondent violated KRPC 8.4(d), as detailed below.

"2.  'It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice.' KRPC 8.4(d). In this case, the Respondent engaged in 'conduct that is prejudicial to the administration of justice' when he provided financial assistance to his son when his son was evading criminal prosecution. As such, the Hearing Panel concludes that the Respondent violated KRPC 8.4(d).

## "AMERICAN BAR ASSOCIATION
## STANDARDS FOR IMPOSING LAWYER SANCTIONS

"In making this recommendation for discipline, the Hearing Panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"*Duty Violated*. The Respondent violated his duty to the system to avoid activity which prejudices justice.

"*Mental State*. The Respondent knowingly violated his duty.

"*Injury*. As a result of the Respondent's misconduct, the Respondent caused actual injury to the legal system.

"*Aggravating or Mitigating Factors*. Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factor present:

"Substantial Experience in the Practice of Law. The Kansas Supreme Court admitted the Respondent to practice law in 1965. At the time the Respondent engaged in misconduct, the Respondent had been practicing law for more than 40 years. Accordingly, the Hearing Panel concludes that the Respondent had substantial experience in the practice of law at the time he engaged in the misconduct.

"Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following mitigating circumstances present:

"Absence of a Prior Disciplinary Record. The Respondent has not previously been disciplined.

"The Present and Past Attitude of the Attorney as Shown by the Respondent's Cooperation During the Hearing and the Respondent's Acknowledgment of the Transgressions. The Respondent fully cooperated in the disciplinary process.

"Remorse. At the hearing on the Formal Complaint, the Respondent expressed genuine remorse.

"In addition to the above-cited factors, the Hearing Panel has thoroughly examined and considered the following Standards:

'Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession, and causes injury or potential injury to a client, the public, or the legal system.' Standard 7.2.

### "RECOMMENDATION

"The Disciplinary Administrator recommended that the Respondent be suspended for 90 days. The Respondent recommended that no discipline be imposed. The Respondent reasoned that he has already been suspended by Colorado for the same misconduct. The Respondent acknowledged, however, that if the Hearing Panel must recommend discipline, that a 90-day suspension would be appropriate.

"Based upon the findings of fact, conclusions of law, and the Standards listed above, the Hearing Panel unanimously recommends that the Respondent be suspended for a period of 90 days from the practice of law in the State of Kansas.

"Costs are assessed against the Respondent in an amount to be certified by the Office of the Disciplinary Administrator."

## DISCUSSION

In a disciplinary proceeding, this court considers the evidence, the findings of the disciplinary panel, and the arguments of the parties and determines whether violations of KRPC exist and, if they do, what discipline should be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Lober*, 288 Kan. 498, 505, 204 P.3d 610 (2009); see Supreme Court Rule 211(f) (2008 Kan. Ct. R. Annot. 313).

The respondent did not take exception with the panel's final hearing report set forth above. Thus, the hearing panel's final report is deemed admitted. Supreme Court Rule 212(c) (2008 Kan. Ct. R. Annot. 327).

We conclude the panel's findings of fact are supported by clear and convincing evidence and that these findings support the panel's conclusions of law. We therefore adopt those findings and conclusions. With respect to the discipline to be imposed, the panel's recommendation that the respondent be suspended from the practice of law in Kansas for a period of 90 days is advisory only and shall not prevent the court from imposing a different discipline. Supreme Court Rule 212(f).

The respondent admits that his misconduct amounted to deceit in violation of KRPC 8.4(c). As the panel noted in its final hearing report, the respondent has been licensed to practice law in Kansas since 1965, although he has apparently never practiced law in this state. He has no previous disciplinary violations, has fully cooperated in these disciplinary proceedings, has acknowledged his wrongdoing, and has expressed genuine remorse for his actions.

At the same time, the charges alleged in the Colorado disciplinary complaint and stipulated to by the respondent are serious and led to a delay of several months in the criminal proceedings against his son. Given the gravity of these allegations, a minority of this court would impose a sanction of indefinite suspension from the practice of law in this state. A majority of this court concludes, based on the limited record before us, that the panel's recommended sanction of a 90-day suspension from the practice of law in Kansas is appropriate.

### CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that respondent William J. Hunsaker be and he is hereby suspended from the practice of law in the state of Kansas for a period of 90 days, effective the date of this opinion, in accordance with Supreme Court Rule 203(a)(2) (2008 Kan. Ct. R. Annot. 308).

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to the respondent and that this opinion be published in the official Kansas Reports.