No. 102,607

In the Matter of STAN M. KENNY, *Respondent.*

(217 P.3d 36)

Opinion filed October 9, 2009.

*Frank D. Diehl,* deputy disciplinary administrator, argued the cause and was on the formal complaint for the petitioner.

*Stan M. Kenny,* respondent, argued the cause pro se.

*Per Curiam:* This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, Stan M. Kenny, of Wichita, an attorney admitted to the practice of law in Kansas in 1997.

On January 23, 2009, the office of the Disciplinary Administrator filed a formal complaint against the respondent alleging violations of the Kansas Rules of Professional Conduct (KRPC). On February 13, 2009, the respondent filed an answer to the formal complaint. A hearing was held on the complaint before a panel of the Kansas Board for Discipline of Attorneys on March 31, 2009, where the respondent was both personally present and represented by counsel. The hearing panel determined that respondent violated KRPC 4.4 (2008 Kan. Ct. R. Annot. 558) (respect for rights of third persons); 8.3(a) (2008 Kan. Ct. R. Annot. 585) (reporting professional misconduct); 8.4(d) (2008 Kan. Ct. R. Annot. 586) (engaging in conduct prejudicial to the administration of justice); and 8.4(g) (engaging in conduct that adversely reflects on fitness to practice law). Upon conclusion of the hearing, the panel made the following findings of fact and conclusions of law, together with its recommendation to this court:

"FINDINGS OF FACT

. . . .

"2.   In March, 2006, Craig and Yvonne Bucl came to Tim R. Karstetter requesting that he prepare an insurance funded buy/sell agreement. Mr. and Mrs. Bucl had been advised by Heath Hampton that an insurance funded buy/sell agreement was necessary. Mr. Karstetter prepared the insurance funded buy/sell agreement for Mr. and Mrs. Bucl.

"3. Later, Mr. and Mrs. Bucl apparently questioned the need for the insurance funded buy/sell agreement. Mr. and Mrs. Bucl retained the Respondent to review this issue. After meeting with Mr. and Mrs. Bucl, the Respondent sent a letter to Mr. Karstetter that provided:

'Sometime last March, 2006, Mr. & Mrs. Bucl approached your office, possibly with the assistance of Mr. Heath Hampton, requesting advice concerning a buy-sell agreement for their corporation. Since that time, Mr. and Mrs. Bucl have questioned the need for the buy-sell agreement, since they are married, and are also the only shareholders in the corporation.

'To be frank, Mr. Karstetter, my clients believe they were mis-advised, and intend to file a complaint with the state Disciplinary Administrator concerning your part in drafting the buy-sell agreement. However, if you were to simply refund your fee to them, in care of this office, I believe they may relent, and not file anything with Director Hazlett.

'I will need to hear from you no later than Monday, January 22, 2007, if this is acceptable to you. If we don't hear from you, we will assume that you would like to address this matter through the Office of the Disciplinary Administrator. If you have any questions, please do not hesitate to contact my office.'

"4. On January 17, 2007, Mr. Karstetter wrote to the Respondent. Mr. Karstetter's letter provided:

'I was quite surprised to receive your letter of January 12, 2007. You had given me a deadline of January 22 to respond, but your envelope was not postmarked until January 16, and I did not receive it until today.

'The facts stated in your letter are not exactly accurate. Mr. and Mrs. Bucl came to me, after being advised by Heath Hampton that they needed to have insurance funded buy/sell agreement. My notes reflect that Mr. Hampton was either a CPA or a Financial Advisor, or both. Mr. and Mrs. Bucl did not consult me regarding the advisability of a buy/sell agreement, but simply to have one prepared. My notes also reflect that they already had purchased the insurance for such a buy/sell agreement. Therefore, I don't feel in any fashion that I 'mis-advised' them when I didn't give them any advice in this regard.

'Mr. and Mrs. Bucl were very pleasant while we were working on this agreement. I enjoyed meeting them. I have even prepared minutes for their corporation after the buy/sell agreement was prepared. They never indicated any dissatisfaction to me at any time.

'I would also point out to you that if you believe I have committed an ethics violation, it is your duty to report that to the disciplinary administrator's office.'

"5. On January 18, 2007, the Respondent responded to Mr. Karstetter's letter. The Respondent's letter provided:

'Please excuse the tardiness of my previous letter. I wasn't aware you may need more time to respond.

'The situation is, I don't know if you have violated any ethics rules. I have simply passed along what my clients intend, with their perspective of the sit-

uation. It appears Mr. Hampton may not have been acting in their best interest, and, from appearances, it seems you may have assisted him.

'Personally, I do not like responding to ethics investigations. My hope was to avoid one for you. If my clients' fee is not returned, it is likely they will initiate a complaint. If their fee is returned, I may be able to persuade them otherwise. My letter was a courtesy to you, not an allegation.

'Nor do I need to be challenged to file ethics complaints on my own. In this case, I don't think I know enough to file the complaint. My point is, one will be filed, unless I can broker a settlement between you and the Bucl's [sic]. I'm simply trying to save you some time and some money.'

On January 26, 2007, Mr. Karstetter wrote to the Disciplinary Administrator, enclosing the correspondence he received from and sent to the Respondent. As a result, the Disciplinary Administrator docketed a complaint against the Respondent.

"6.   On January 23, 2009, the Disciplinary Administrator filed a Formal Complaint. The Respondent timely answered. In his Answer, the Respondent stipulated to the facts and the rule violations alleged in the Formal Complaint.

## "CONCLUSIONS OF LAW

"1.   Based upon the Respondent's stipulation and the above findings of fact, the Hearing Panel concludes as a matter of law that the Respondent violated KRPC 4.4, KRPC 8.3, KRPC 8.4(d), and KRPC 8.4(g), as detailed below.

"2.   KRPC 4.4 provides:

'In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person.'

The Respondent's letters to Mr. Karstetter had no substantial purpose other than to burden Mr. Karstetter and coerce a refund of the attorney fee. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 4.4.

"3.   KRPC 8.3(a) provides that '[a] lawyer having knowledge of any action, inaction, or conduct which in his or her opinion constitutes misconduct of an attorney under these rules shall inform the appropriate professional authority.' In this case, the Respondent stated that Mr. Karstetter 'mis-advised' the Bucls and that, as a result, the Bucls were going to file a complaint unless Mr. Karstetter returned the attorney fees paid by the Bucls. Because the Respondent had knowledge of what he perceived to be a violation of the Kansas Rules of Professional Conduct, the Respondent had an obligation to report Mr. Karstetter to the Disciplinary Administrator. The Respondent did not report Mr. Karstetter's conduct, rather, he made a threat to report. The Hearing Panel concludes that the Respondent violated KRPC 8.3(a).

"4.   'It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice.' KRPC 8.4(d). In this case, in writing the letters to Mr. Karstetter, the Respondent engaged in 'conduct that is preju-

dicial to the administration of justice.' As such, the Hearing Panel concludes that the Respondent violated KRPC 8.4(d).

"5. 'It is professional misconduct for a lawyer to . . . engage in any other conduct that adversely reflects on the lawyer's fitness to practice law.' KRPC 8.4(g). Again, writing the two letters to Mr. Karstetter and demanding that the Bucls attorney fees be returned in exchange for refraining from filing a disciplinary complaint, adversely reflects on the Respondent's fitness to practice law. As such, the Hearing Panel concludes that the Respondent violated KRPC 8.4(g).

## "AMERICAN BAR ASSOCIATION
## STANDARDS FOR IMPOSING LAWYER SANCTIONS

"In making this recommendation for discipline, the Hearing Panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"*Duty Violated.* The Respondent violated his duty to the legal profession.

"*Mental State.* The Respondent negligently violated his duty.

"*Injury.* As a result of the Respondent's misconduct, the Respondent caused injury to the legal profession.

"*Aggravating or Mitigating Factors.* Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factors present:

"*Prior Disciplinary Offenses.* On November 28, 2005, the Respondent entered into the Attorney Diversion Program for having violated KRPC 5.3 and KRPC 5.5. The Respondent complied with all the terms and conditions contained in the agreement. Thereafter, the case was dismissed.

"*Dishonest or Selfish Motive.* The Respondent's conduct appears to have been motivated by dishonesty or perhaps, selfishness.

"*Substantial Experience in the Practice of Law.* The Respondent was admitted to the practice of law in the State of Kansas in 1997. At the time the Respondent engaged in the misconduct, the Respondent had been practicing law for 10 years. Accordingly, the Hearing Panel concludes that the Respondent had substantial experience in the practice of law.

"Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following mitigating circumstance present:

"*The Present and Past Attitude of the Attorney as Shown by His or Her Cooperation During the Hearing and His or Her Full and Free Acknowledgment of the Transgressions.* The Respondent fully cooperated during every stage of the disciplinary investigation and prosecution.

"In addition to the above-cited factors, the Hearing Panel has thoroughly examined and considered the following Standards:

'6.23    Reprimand is generally appropriate when a lawyer negligently fails to comply with a court order or rule, and causes injury or potential injury to a client or other party, or causes interference or potential interference with a legal proceeding.

'7.3    Reprimand is generally appropriate when a lawyer negligently engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public, or the legal system.'

## "RECOMMENDATION

"The Disciplinary Administrator recommended that the Respondent be censured and that the censure be published. The Respondent recommended that his plan of probation be adopted.

"The Respondent requested that he be placed on probation, pursuant to Kan. Sup. Ct. R. 211(g). . . .

"While it appears that each of the provisions of Kan. Sup. Ct. R. 211(g) has been satisfied, probation is not warranted in this case. At the hearing, the Respondent clearly expressed his understanding of his misconduct. In the opinion of the Hearing Panel, probation is not necessary. A published censure is sufficient discipline for the misconduct. However, the Hearing Panel has carefully reviewed the Respondent's probation plan and the Hearing Panel urges the Respondent to comply with the terms and conditions of his plan of probation on his own.

"Based upon the findings of fact, conclusions of law, and the Standards listed above, the Hearing Panel unanimously recommends that the Respondent be censured by the Kansas Supreme Court. The Hearing Panel further recommends that the censure be published in the Kansas Reports.

"Costs are assessed against the Respondent in an amount to be certified by the Office of the Disciplinary Administrator."

## DISCUSSION

In a disciplinary proceeding, this court considers the evidence, the findings of the disciplinary panel, and the arguments of the parties and determines whether violations of KRPC exist and, if they do, what discipline should be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Lober*, 288 Kan. 498, 505, 204 P.3d 610 (2009); see Supreme Court Rule 211(f) (2008 Kan. Ct. R. Annot. 313).

The respondent did not take exception with the panel's final hearing report set forth above. Thus, the hearing panel's final re-

port is deemed admitted. Supreme Court Rule 212(c) (2008 Kan. Ct. R. Annot. 327).

We conclude the panel's findings of fact are supported by clear and convincing evidence and support the panel's conclusions of law, and we adopt those findings and conclusions. With respect to the discipline to be imposed, the panel's recommendation that the respondent be censured is advisory only and shall not prevent the court from imposing a different discipline. Supreme Court Rule 212(f).

During oral argument, the respondent made reference to his own depression and his attempts to address this problem. The respondent submitted the following plan of probation to the hearing panel:

"1.   Respondent will be placed on probation for a period of twelve (12) months to begin on a date specified by the Disciplinary Administrator and Review Committee.

"2.   The Respondent shall attend six (6) hours of Ethics: Continuing Legal Education, and provide proof to the Disciplinary Administrator. This shall be performed during the twelve (12) months of probation.

"3.   The Respondent will continue counseling with Connie Bucy, and will provide periodic reports to the Disciplinary Administrator regarding progress, attendance and any other information that they so require.

"4.   The Respondent shall also continue treatment for his depression with his primary doctor Dr. Elsie Steelberg. This shall continue until treatment is deemed no longer necessary by Dr. Steelberg. Dr. Steelberg shall notify the Disciplinary Administrator in the event that the Respondent discontinues treatment against the recommendation of Dr. Steelberg during said probation period.

"5.   The Respondent will write to the Disciplinary Administrator's office and detail how he could have avoided the problem that occurred in this case.

"6.   The Respondent will send a letter of apology to the attorney, Tim R. Karstetter.

"7.   The Respondent will also meet with the Depression Committee of the Wichita Bar Association, as they do have monthly meetings. The Respondent has requested that David Hiebert (S. Ct. No. 07585) sponsor him regarding this. Mr. Hiebert will report to the committee any lack of attendance or any problems with the Respondent communicating with him.

"8.   The Respondent shall attend any required scheduled meetings with the Office of the Disciplinary Administrator. The Respondent will provide information as requested by the Office of the Disciplinary Administrator in a timely manner.

"9. The Respondent shall pay any probation fees on a timely basis for the duration of probation.

"10. The Respondent will not violate these terms of probation or provisions of the Kansas Rules of Professional Conduct. In the event that the Respondent violates the terms of probation, or any of the provisions [of] the Kansas Rules of Professional Conduct, the Respondent shall immediately report such violations to the Disciplinary Administrator.

"11. The Respondent will comply with Kansas Rules of Professional Conduct. Additionally the Respondent shall cooperate with the Disciplinary Administrator in providing information regarding any investigations regarding his work as required by Kansas Supreme Court Rule 207.

"12. The Respondent shall notify the Disciplinary Administrator within fourteen (14) days of any changes in his address.

"13. The Respondent is putting the probation plans into effect prior to the hearing on the [complaint] by attending the required meetings and therapy, and ongoing treatment for his depression, in addition to signing up for additional CLE in Ethics.

"14. The Respondent would further allege that this misconduct can be corrected by probation, and placing him on probation is in the best interest of the legal profession and the citizens of the State of Kansas.

"15. David Hiebert (S. Ct. No. 07585) will supervise the practice of the Respondent during his probationary period, or for any length of time the Board finds appropriate."

The panel did not believe the plan submitted was necessary but encouraged the respondent to abide by the terms of his plan. We agree with the panel that published censure is the most appropriate discipline for the violations set forth above. In light of the respondent's presentation, we would strongly suggest and encourage the respondent to abide by the terms of his probation plan in his practice of law in this state.

A minority of the court concluded that probation according to the plan submitted was the most appropriate disposition of the respondent's case. All members of the court recognize that that the structure provided in the respondent's probation plan would be beneficial to the respondent in his practice of law in Kansas.

## CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that the respondent Stan M. Kenny be and he is hereby disciplined by published censure in accordance

with Supreme Court Rule 203(a)(3) (2008 Kan. Ct. R. Annot. 266) for violations of KRPC 4.4; 8.3(a); and 8.4(d) and (g).

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to the respondent and that this opinion be published in the official Kansas Reports.