No. 101,212

In the Matter of TERENCE A. LOBER, *Respondent.*

(204 P.3d 610)

Opinion filed April 3, 2009.

*Stanton A. Hazlett,* disciplinary administrator, argued the cause and was on the formal complaint for petitioner.

No appearance by respondent.

*Per Curiam:* This is an original uncontested proceeding in discipline filed by the office of the Disciplinary Administrator against Terence A. Lober, of Leavenworth, Kansas, an attorney licensed to practice law in Kansas since September 1979. A formal complaint was filed on May 13, 2008.

On July 1, 2008, a hearing on the formal complaint was held before a hearing panel of the Kansas Board for Discipline of Attorneys. Respondent did not appear, either in person or by counsel.

After hearing the evidence presented at the hearing, the hearing panel concluded that Respondent violated six rules of professional conduct:

KRPC 1.1 (2008 Kan. Ct. R. Annot. 400) (competence);

KRPC 1.2 (2008 Kan. Ct. R. Annot. 411) (scope of representation);

KRPC 1.3 (2008 Kan. Ct. R. Annot. 415) (diligence);

KRPC 1.4(a) (2008 Kan. Ct. R. Annot. 432) (communication);

KRPC 3.2 (2008 Kan. Ct. R. Annot. 525) (expediting litigation); and

KRPC 8.4(d) and (g) (2008 Kan. Ct. R. Annot. 586) (misconduct).

In addition, the hearing panel found that Respondent violated Kansas Supreme Court Rule 211(b) (2008 Kan. Ct. R. Annot. 313) (failure to respond to the formal complaint).

The panel unanimously recommended that Respondent be disbarred. The panel made the following findings of fact, conclusions of law, and recommendations for discipline:

## "FINDINGS OF FACT

"The Hearing Panel finds the following facts, by clear and convincing evidence:

. . . .

"2. In early 2005, [A.W.] and [C.W.] were considering purchasing a duplex in Leavenworth, Kansas, from Juanita Simpson. While touring the duplex, [A.W.] and [C.W.] noticed a label marked 'lift station' adjacent to a breaker in the breaker box. According to [A.W.] and [C.W.], they questioned Ms. Simpson regarding the reference. Ms. Simpson stated that she was unsure why the breaker was labeled lift station as there was no lift station connected to the house. Ms. Simpson indicated that there was a sump pump and that the reference to the lift station must refer to the sump pump.

"3. [A.W.] and [C.W.] retained a company to conduct an inspection of the property. The inspector examined the property. The inspector informed [A.W.] and [C.W.] that there was no lift station, but that the reference must refer to the sump pump.

"4. [A.W.] and [C.W.] purchased the property. The disclosure statement, completed by Ms. Simpson's realtor, Drehr Lesini, and signed by Ms. Simpson, did not include any reference to the lift station and did not include the documentation regarding the repairs made to the lift station.

"5. After they purchased the property, [A.W.] and [C.W.] discovered that the sewer system of the home was connected to a lift station and could not be otherwise connected to the city's sewer system.

"6. [A.W.] and [C.W.] located a receipt from All American Carpet Cleaning inside the duplex that established that the sewer backed up into the basement and Ms. Simpson paid to have the carpet cleaned. Further, [C.W.] contacted the real estate company that was involved with the sale of [the] duplex to Ms. Simpson from the previous owner. [C.W.] obtained a copy of the disclosure statement provided to Ms. Simpson at the time she purchased the home. In the disclosure statement, the previous owners disclosed the existence of the lift station to Ms. Simpson.

"7. In August, 2005, [A.W.] and [C.W.] retained the Respondent to represent them in an action for the failure to disclose the existence of [a] lift station. [A.W.] and [C.W.,] and the Respondent entered into a written contingency fee agreement. The fee agreement provided that the Respondent would receive 25% of any amounts collected. Additionally, the fee agreement provided that the Respondent would receive additional fees based upon the hours of time he put into the case. Finally, the fee agreement stated that the Respondent would bill [A.W.] and [C.W.] in quarter hour increments.

"8. On December 13, 2005, the Respondent filed suit against Ms. Simpson in behalf of [A.W.] and [C.W.]. Ms. Simpson was served with process and, on January 18, 2006, Ms. Simpson answered the Petition.

"9. Thereafter, on August 15, 2006, the Respondent took Ms. Simpson's deposition. During her deposition, Ms. Simpson testified that she owned the home

for approximately three years. She testified that she knew of the existence of the lift station, that she disclosed the existence of the lift station to her realtors, and that her realtors indicated that they would provide appropriate documentation regarding the repairs on the lift station to [A.W.] and [C.W.]'s realtor. During the three years that she owned the property, Ms. Simpson paid approximately $4,000 for repairs made to the lift station.

"10.    Ms. Simpson's realtors did not disclose the existence of the lift station to [A.W.] and [C.W.]'s realtors nor did Ms. Simpson's realtors provide [A.W.] and [C.W.]'s realtor with a copy of the documentation relating to the repairs on the lift station.

"11.    On February 22, 2006, the Court held a case management conference in [A.W.] and [C.W.]'s case. [A.W.], the Respondent, Ms. Simpson, and her attorney, Kelly Egli appeared in person. The Court entered a case management order and thereby ordered the parties to file their witness and exhibit list by March 31, 2006, complete discovery by May 26, 2006, file all pretrial motions by June 9, 2006, and appear for pretrial motions hearing on July 14, 2006. Finally, the Court scheduled the trial for August 28, 2006.

"12.    On July 13, 2006, because the parties had failed to comply with the Court's case management order, the Court met with the Respondent and Ms. Egli. At that time, the Respondent announced that he wanted to add additional defendants to the action. The Court directed the Respondent to file an amended petition by July 21, 2006.

"13.    On July 21, 2006, the Respondent filed a motion to amend the petition and an amended petition, adding Ms. Simpson's realtors, Ms. Lesini and Steven Bloecher, and real estate company, American Eagle Realty, as defendants. The Respondent failed to provide Ms. Egli with a copy of the motion. While the Respondent obtained service on Ms. Lesini and American Eagle Realty, the Respondent did not achieve service on Mr. Bloecher.[1]

"14.    After approximately April, 2006, the Respondent failed to return [A.W.] and [C.W.]'s telephone calls. [A.W.] attempted to see the Respondent, but the Respondent refused to see him. Because the Respondent would not communicate with [A.W.] and [C.W.], they were unable to discover the status of their case.

"15.    Thereafter, on May 9, 2007, the Court granted default judgment on Count One of the petition against American Eagle Realty and Ms. Lesini.[2]

---

[1] "According to [A.W.] and [C.W.], Ms. Lesini and Mr. Bloecher were married, became estranged, and then divorced. Mr. and Mrs. [W.] had a difficult time understanding why the Respondent was unable to achieve service on Mr. Bloecher, because on a number of occasions, while [A.W.] and [C.W.] were in the Respondent's office, the Respondent was conversing with Mr. Bloecher on the telephone."

[2] "According to the judge's notes, default judgment was also entered against Mr. Bloecher. However, the Respondent failed to obtain service on Mr. Bloecher. Later, when the journal entry of judgment was filed, it included only American Eagle Realty and Ms. Lesini."

"16.   On July 17, 2007, [A.W.] and [C.W.] filed a complaint with the Disciplinary Administrator's office against the Respondent. Robert B. Van Cleave, an attorney, was appointed to investigate the complaint.

"17.   On August 15, 2007, the Court entered a notice of dismissal for lack of prosecution. According to the notice, the Court would dismiss the case on October 9, 2007, unless the Respondent requested in writing that the case be taken off the dismissal docket.

"18.   During the course of his investigation, Mr. Van Cleave discovered the Court's August 15, 2007, notice. Mr. Van Cleave notified [A.W.] and [C.W.] that the Court would be dismissing their case on October 9, 2007, if the Court did not receive a written request that the case be taken off the dismissal docket.

"19.   On October 8, 2007, [A.W.] and [C.W.] provided the Court with a written request that their case be removed from the dismissal docket. In their request, [A.W.] and [C.W.] stated: 'That plaintiffs need additional time to find their attorney to get the Journal Entry of Judgment filed or get someone else to prepare and file it.'

"20.   On October 10, 2007, the Respondent provided the Court with a Journal Entry of Judgment by Default. The Respondent failed to provide Ms. Egli with a copy of the proposed Journal Entry of Judgment by Default. The Court entered the Journal Entry.

"21.   The Respondent took no action to preserve [A.W.] and [C.W.]'s action against Ms. Simpson and Mr. Bloecher. Neither [A.W.] nor [C.W.] authorized the Respondent to allow their actions against Ms. Simpson and Mr. Bloecher be dismissed.

"22.   On October 12, 2007, the Court entered an order of dismissal for lack of prosecution in [A.W.] and [C.W.]'s case, as to Ms. Simpson and Mr. Bloecher.

## "CONCLUSIONS OF LAW

"1.   Based upon the findings of fact, the Hearing Panel concludes as a matter of law that the Respondent violated KRPC 1.1, KRPC 1.2, KRPC 1.3, KRPC 1.4, KRPC 3.2, KRPC 8.4 and Kan. Sup. Ct. R. 211(b), as detailed below.

"2.   Lawyers must provide competent representation to their clients. KRPC 1.1. 'Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.' The Respondent failed to competently represent [A.W.] and [C.W.] when he failed to provide thorough representation. The Respondent failed to provide thorough representation when he failed to exhaust reasonable means to achieve service of process on Mr. Bloecher. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 1.1.

"3.   KRPC 1.2 provides:

"(a)   A lawyer shall abide by a client's decisions concerning the lawful objectives of representation, subject to paragraphs (c), (d), and (e), and shall consult with the client as to the means which the lawyer shall choose to pursue. A lawyer

shall abide by a client's decision whether to accept an offer of settlement of a matter. . . .

. . . .

"(c) A lawyer may limit the objectives of the representation if the client consents after consultation.

The Respondent failed to act take appropriate action to achieve the objectives of the representation of [A.W.] and [C.W.]. The Respondent allowed the action against Ms. Simpson and Mr. Bloecher to be dismissed by the Court. The Respondent did not first obtain [A.W.] and [C.W.]'s consent before allowing the case to be dismissed as to Ms. Simpson and Mr. Bloecher. As such, the Hearing Panel concludes that the Respondent violated KRPC 1.2.

"4. Attorneys must act with reasonable diligence and promptness in representing their clients. *See* KRPC 1.3. In this case, the Respondent failed to provide diligent representation to [A.W.] and [C.W.] when he failed to make reasonable attempts to obtain service on Mr. Bloecher. Mr. Bloecher is a businessman who works in the greater Kansas City area. The Respondent did not take reasonable steps to locate Mr. Bloecher and have Mr. Bloecher served with process. The Respondent also failed to provide diligent representation to [A.W.] and [C.W.] when he failed to file a Journal Entry of Judgment for five months after the Court entered judgment. The Respondent's lack of diligence in this regard nearly cost [A.W.] and [C.W.] the judgment that the Court had previously entered. Finally, the Respondent failed to provide diligent representation to [A.W.] and [C.W.] by failing to properly prosecute their case against Ms. Simpson. Because the Respondent failed to act with reasonable diligence and promptness in representing [A.W.] and [C.W.], the Hearing Panel concludes that the Respondent violated KRPC 1.3.

"5. KRPC 1.4(a) provides that '[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.' In this case, the Respondent violated KRPC 1.4(a) when he failed to properly communicate with [A.W.] and [C.W.] after April, 2006. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 1.4(a).

"6. An attorney violates KRPC 3.2 if he fails to make reasonable efforts to expedite litigation consistent with the interests of his client. The Respondent failed to expedite [A.W.] and [C.W.]'s litigation. The Respondent's failures caused the Court to issue a notice that the case would be dismissed unless the Respondent took action. The Respondent failed to respond to the Court's notice within the prescribed time. If [A.W.] and [C.W.] had not responded to the Court's notice, they would have lost the judgment against Ms. Lesini and American Eagle Realty that the Court had previously entered. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 3.2.

"7. 'It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice.' KRPC 8.4(d). The Respondent engaged in 'conduct that is prejudicial to the administration of justice' when he failed to properly protect [A.W.] and [C.W.]'s cause of action against Ms. Simpson

and Mr. Bloecher. As such, the Hearing Panel concludes that the Respondent violated KRPC 8.4(d).

"8. 'It is professional misconduct for a lawyer to . . . engage in any other conduct that adversely reflects on the lawyer's fitness to practice law.' KRPC 8.4(g). The Respondent's failure to obtain service of process on Mr. Bloecher, despite the fact that the Respondent spoke to Mr. Bloecher by telephone while [A.W.] and [C.W.] were in the Respondent's office, would lead a reasonable person to suspect the Respondent of wrongdoing. Accordingly, this conduct adversely reflects on the Respondent's fitness to practice law. As such, the Hearing Panel concludes that the Respondent violated KRPC 8.4(g).

"9.   The Kansas Supreme Court Rules require attorneys to file Answers to Formal Complaints. Kan. Sup. Ct. R. 211(b) provides the requirements:

The respondent shall serve an answer upon the Disciplinary Administrator within twenty days after the service of the complaint unless such time is extended by the Disciplinary Administrator or the hearing panel.

In this case, the Respondent violated Kan. Sup. Ct. R. 211(b) by failing to file a written Answer to the Formal Complaint. Accordingly, the Hearing Panel concludes that the Respondent violated Kan. Sup. Ct. R. 211(b).

### "AMERICAN BAR ASSOCIATION
### STANDARDS FOR IMPOSING LAWYER SANCTIONS

"In making this recommendation for discipline, the Hearing Panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"*Duty Violated*. The Respondent violated his duty to his client to provide competent and diligent representation and reasonable communication. Additionally, the Respondent violated his duty to the legal system to expedite litigation. Finally, the Respondent violated his duty to the legal profession to cooperate in the disciplinary process.

"*Mental State*. The Respondent knowingly and intentionally violated his duties.

"*Injury*. As a result of the Respondent's misconduct, the Respondent caused actual injury to [A.W.] and [C.W.].

"*Aggravating or Mitigating Factors*. Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factors present:

"Prior Disciplinary Offenses. The Respondent has been disciplined on a number of occasions:

"1.   On May 23, 1994, in B5807, the Disciplinary Administrator's office informally admonished the Respondent for having violated KRPC 1.3 and KRPC 1.4.

"2.   On February 26, 1996, the Disciplinary Administrator's office informally admonished the Respondent for having violated KRPC 1.3, KRPC 1.4, and KRPC 1.7.

"3.   On December 11, 1998, the Kansas Supreme Court placed the Respondent on probation for two years for having violated KRPC 1.1, KRPC 1.3, KRPC 1.4, KRPC 1.16, KRPC 3.1, KRPC 3.2, KRPC 3.3, KRPC 4.1, KRPC 8.1, KRPC 8.4, and Kan. Sup. Ct. R. 207. In those cases, the Respondent failed to diligently file a journal entry, the Respondent failed to provide a client with a copy of a proposed Journal Entry, the Respondent failed to return telephone calls, and the Respondent failed to cooperate in disciplinary investigations. The Respondent remained on probation until December 10, 2000. See *In re Lober*, 266 Kan. 404, 969 P.2d 885 (1998).

"4.   On June 21, 2000, in DA7352, the Disciplinary Administrator's office informally admonished the Respondent for having violated KRPC 1.16.

"5.   Also on June 21, 2000, in DA7394, the Disciplinary Administrator's office informally admonished the Respondent for having violated KRPC 1.1, KRPC 1.3, KRPC 1.4, and KRPC 1.16.

"6.   On October 31, 2003, the Kansas Supreme Court suspended the Respondent from the practice of law for a period of one year for having violated KRPC 1.4, KRPC 8.1(b), and Kan. Sup. Ct. R. 207(b). See *In re Lober*, 276 Kan. 633, 78 P.3d 442 (2003).[3]

"Dishonest or Selfish Motive. Because the Respondent failed to participate in the disciplinary proceedings it is impossible to know whether the Respondent has a legitimate explanation for his conduct in this case. However, the Hearing Panel is called upon to make its conclusions based upon clear and convincing evidence, not speculation as to what the Respondent would say if he had properly participated. The clear and convincing evidence before the Hearing Panel is that the Respondent was not honest with [A.W.] and [C.W.]. The Respondent's failure to properly obtain service on an individual with whom he had regular contact makes no sense. Thus, the Hearing Panel concludes that the Respondent's misconduct was motivated by dishonesty and selfishness.

"A Pattern of Misconduct. The misconduct in his case is similar to the misconduct in the Respondent's previous disciplinary cases. Accordingly, the Hearing Panel concludes that over the past 14 years, the Respondent engaged in a pattern of misconduct.

"Multiple Offenses. The Respondent violated KRPC 1.1, KRPC 1.2, KRPC 1.3, KRPC 1.4, KRPC 3.2, KRPC 8.4(d), KRPC 8.4(g), and Kan. Sup. Ct. R. 211(b). As such, the Respondent committed multiple offenses.

"Bad Faith Obstruction of the Disciplinary Proceeding by Intentionally Failing to Comply with Rules or Orders of the Disciplinary Process. The Respondent

---

[3] "Following the one year suspension, on March 11, 2005, the Kansas Supreme Court reinstated the Respondent's license to practice law in the State of Kansas."

knew that he was required to provide written responses to the complaint filed by [A.W.] and [C.W.]. The Respondent never filed the response. The Hearing Panel, therefore, concludes that the Respondent obstructed the disciplinary proceeding.

"Vulnerability of Victim. [A.W.] and [C.W.] were vulnerable to the Respondent's misconduct.

"Substantial Experience in the Practice of Law. The Kansas Supreme Court admitted the Respondent to practice law in 1979. At the time the Respondent engaged in misconduct, the Respondent had been practicing law for a period of 26 years. Accordingly, the Hearing Panel concludes that the Respondent had substantial experience in the practice of law at the time he engaged in the misconduct.

"Indifference to Making Restitution. To date, the Respondent has made no effort to make restitution to [A.W.] and [C.W.] for their loss.

"Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found no mitigating circumstances present.

"In addition to the above-cited factors, the Hearing Panel has thoroughly examined and considered the following Standards: 'Disbarment is generally appropriate when . . . a lawyer knowingly fails to perform services for a client and causes serious or potentially serious injury to a client.' Standard 4.41.

'Disbarment is generally appropriate when a lawyer:

. . . .

(b) has been suspended for the same or similar misconduct, and intentionally or knowingly engages in further acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession.' Standard 8.1."

In addition to failing to file a written answer to the formal complaint and to appear at the hearing, Respondent also failed to file exceptions to this final hearing report.

Attorney misconduct must be established by clear and convincing evidence. See Supreme Court Rule 211(f) (2008 Kan. Ct. R. Annot. 313) (misconduct to be established by clear and convincing evidence). Clear and convincing evidence is "evidence that causes the factfinder to believe that 'the truth of the facts asserted is highly probable.' " *In re Dennis,* 286 Kan. 708, 725, 188 P.3d 1 (2008) (quoting *In re B.D.-Y.,* 286 Kan. 686, 697, 187 P.3d 594 [2008]). The record before the hearing panel supports its findings of fact and those findings support its conclusions of law. Accordingly, we would typically adopt the panel's findings of fact and conclusions of law.

However, on January 26, 2009, 2 days before scheduled arguments before this court, Respondent filed a motion for continuance claiming that he had not been served properly and was therefore officially unaware of the scheduled arguments. He further alleged he had not received notice of the formal complaint, of the panel hearing, or of the final hearing report. In the motion, Respondent requested the "opportunity to respond to, either admit or deny, and offer mitigation and extenuation to any allegations admitted or established as a fact before this Court."

Respondent explained that his address changed several times in 2008. He left Kansas in May 2008 and stayed with relatives and in hotels in Washington and Florida in the summer of 2008. He further explained that by August 2008, he "was receiving mail at not less than five addresses being the home of the Seattle, Washington relative, a post office box in Seattle, Washington, the street address of the Seattle, Washington duplex apartment, the respondent's former home and former law office addresses in Kansas." He also alleged that his landlord's son had been stealing his mail.

According to Respondent's motion, in December 2008, he moved to Denver, Colorado, and "was alerted to the pending matter as a result of a phone call from a Kansas attorney who noticed Respondent's name on the Supreme Court docket." He contacted a Kansas attorney, John Fields, seeking representation. Fields declined to represent Respondent, but did request copies of the complaint and other documents from the Disciplinary Administrator's office. Fields mailed these documents to Respondent, but the documents were allegedly sent to Respondent's Seattle post office box, and he did not receive them.

Respondent claimed that "at all times from before and after May 2008, and until the present," he has maintained a Kansas mailing address —on Hillside Rd, Leavenworth, Kansas—and members of his immediate family continue to reside at that address. He did not, however, receive any mail regarding this matter at that address. Respondent claimed that he "has registered with the Clerk of the Kansas Supreme Court using the address on Hillside Road, Leavenworth, Kansas and has used this address as his residential

address in registering with the Kansas Supreme Court for the past twenty years."

Finally, he represented that he would "not object to an action which would suspend indefinitely the law license of Respondent."

The Disciplinary Administrator filed his response on January 27, 2009, objecting to Respondent's request for a continuance. He pointed out that on the 2008 attorney registration form filled out by Respondent and given to the Clerk of the Appellate Courts in May 2008, the Hillside address was stricken and a hand-written note ordered "use office address." The office address listed was on 2300 South 4th Street, Leavenworth, Kansas. The Disciplinary Administrator emphasized that notices of the proceedings were dutifully mailed to this address that Respondent listed with the Clerk in compliance with Supreme Court Rule 215 (2008 Kan. Ct. R. Annot. 339), which requires the Administrator to serve a respondent via personal service or certified mail "to the address shown on the attorney's most recent registration, or at his or her last known office address."

The Disciplinary Administrator further pointed out that a certified mail receipt in the record showed that the formal complaint against Respondent was received and signed for by an individual at the Respondent's given address on May 15, 2008. As evidence of the Respondent's awareness of the allegations against him, the Disciplinary Administrator also referred to Respondent's letter in the record responding to the letter of the attorney assigned to investigate him. Further, he argued that Respondent admitted to having had actual notice of the scheduled proceedings since December 2008.

We can conclude that Respondent obviously had notice of the proceedings sufficient to file a motion with this court the week arguments were scheduled. He also admitted that he had been aware of the scheduling of the arguments since December.

We cannot conclude, however, that Respondent received official notice of the formal complaint, the panel hearing, the panel's final report, or oral arguments before this court. Nevertheless, it is clearly his responsibility to notify the Clerk of the Appellate Courts of his current address. See Supreme Court Rule 208(c) (2008 Kan.

Ct. R. Annot. 307) ("Every registrant shall within thirty days after any change of address notify the Clerk of such change."). This he failed to do, leading to many of his problems. We also believe he bears some independent responsibility for monitoring the status of allegations that he knew were being made against him by clients and that he knew were being investigated by an attorney assigned by the Disciplinary Administrator's office. This he also wholly failed to do.

The panel's recommendation of disbarment was based in part upon its determination that Respondent had failed to file an answer to the formal complaint in violation of Supreme Court Rule 211(b). The recommendation is "advisory only and shall not prevent the Court from imposing sanctions greater or lesser than those recommended." Supreme Court Rule 212(f) (2008 Kan. Ct. R. Annot. 328-29). While Respondent objects to the "extreme sanction of disbarment," he does not object to indefinite suspension. Under the circumstances of this case, we conclude that indefinite suspension is the appropriate sanction.

IT IS THEREFORE ORDERED that Respondent, Terence A. Lober, be indefinitely suspended in the state of Kansas, effective the date of this opinion, in accordance with Supreme Court Rule 203(a)(2) (2008 Kan. Ct. R. Annot. 266) for violations of KRPC 1.1, 1.2, 1.3, 1.4(a), 3.2, and 8.4(d) and (g).

IT IS FURTHER ORDERED that this opinion be published in the official Kansas Reports and that the costs of these proceedings be assessed against Respondent.

DAVIS, C.J., not participating.

LARSON, S.J., assigned.

EDWARD BOUKER, District Judge, assigned.