No. 105,258

In the Matter of BART A. CHAVEZ, *Respondent*.

(251 P.3d 628)

Opinion filed April 8, 2011.

*Kimberly L. Knoll*, Deputy Disciplinary Administrator, argued the cause, and *Stanton A. Hazlett*, Disciplinary Administrator, was with her on the formal complaint for the petitioner.

*Bart A. Chavez*, respondent, argued the cause pro se.

*Per Curiam*: This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, Bart A. Chavez, of Omaha, Nebraska, an attorney admitted to the practice of law in Kansas in 1991.

On July 23, 2010, the office of the Disciplinary Administrator filed a formal complaint against the respondent alleging violations of the Kansas Rules of Professional Conduct (KRPC). A hearing was held on the complaint before a panel of the Kansas Board for Discipline of Attorneys on October 12, 2010, at which respondent presented an answer to the formal complaint. The hearing panel determined that respondent violated KRPC 3.5(d) (2010 Kan. Ct. R. Annot. 557) (engaging in undignified or discourteous conduct degrading to a tribunal); and 8.4(d) (2010 Kan. Ct. R. Annot. 603) (engaging in conduct prejudicial to the administration of justice). Upon conclusion of the hearing, the panel made the following findings of fact and conclusions of law, together with its recommendation to this court:

"FINDINGS OF FACT

. . . .

"2. The Kansas Supreme Court admitted the Respondent to the practice of law in the State of Kansas on April 26, 1991. The Respondent sought and obtained permission to transfer his license to inactive status in 1997. Additionally, the Nebraska Supreme Court admitted the Respondent to the practice of law. Finally, the Respondent regularly practices before the United States Department of Justice, Executive Office for Immigration Review (EOIR).

"3. On July 14, 2006, the Respondent entered his appearance as counsel of record in the *Matter of Sindiso Luphahla*, a case that was pending before the Elizabeth, New Jersey, Immigration Court. The case was transferred to the Dallas, Texas, Immigration Court and on October 16, 2006, the Respondent entered his appearance as counsel of record.

"4. Thereafter, the Court scheduled the 'merits' hearing for August 3, 2007.

"5. On July 19, 2007, Ms. Luphahla filed a motion to continue the hearing, asserting that the Respondent was unable to appear in court on the scheduled date. On July 21, 2007, the Court denied the motion to continue.

"6. On July 23, 2007, the Respondent filed a motion to withdraw as counsel of record for Ms. Luphahla. The following day, on July 24, 2007, the Court denied the Respondent's motion to withdraw.

"7. On July 30, 2007, the Respondent filed a second motion to withdraw as attorney for Ms. Luphahla, alleging identical reasons for the withdrawal as the first motion to withdraw. That same day, the Court denied the Respondent's second motion to withdraw.

"8. Later that day, Dallas, Texas, Court Administrator, Barbara Baker, called the Respondent to inform him that the Court had denied the Respondent's second motion to withdraw. The Respondent became very upset and angry with Ms. Baker and engaged in a confrontational conversation with her using offensive and disrespectful language directed at Ms. Baker and the Court. During the conversation, the Respondent asked Ms. Baker to relay a message to the Court that he wished to have a telephonic hearing on August 4, 2007.

"9. Ms. Baker relayed the Respondent's request and the Court denied the Respondent's request. Ms. Baker called the Respondent a second time to inform him that the Court denied the Respondent's request for a telephonic hearing. During the Respondent's second telephone conversation with Ms. Baker, he again engaged in a confrontational conversation with Ms. Baker using offensive and disrespectful language directed at Ms. Baker and the Court.

"10. On August 1, 2007, the Respondent called the Court and asked to speak to Ms. Baker. The Respondent engaged in a third confrontational conversation with Ms. Baker using offensive language, disrespectful language, and profanity, directed at Ms. Baker and the Court.

"11. On August 3, 2007, the Respondent failed to appear at the Dallas, Texas, Immigration Court on behalf of Ms. Luphahla as ordered.

"12. On August 21, 2008, Office of General Counsel for the EOIR filed a Notice of Intent to Discipline the Respondent, alleged that the Respondent 'engaged in contumelious or otherwise obnoxious conduct,' and requested that the Respondent be suspended for a period of six months.

"13. In April, 2009, the Respondent entered into a Settlement Agreement with the Office of General Counsel. In the agreement, the Respondent acknowledged that the Office of General Counsel had met its burden to prove that the Respondent engaged in professional misconduct. The agreement provided, in pertinent part, as follows:

'4. Respondent consents to the imposition of a public censure and OGC agrees to accept a public censure in lieu of the sixmonth suspension that OGC proposed in the NID. Respondent's public censure will be reflected on the EOIR internet website list of disciplined practitioners for a period of six months, and after six months it will be removed and placed on the EOIR internet website list of previously disciplined practitioners. OGC agrees to accept reduced discipline in light of Respondent's recent diagnosis of bipolar condition and Respondent's effort to seek medical attention for this condition.

'5. Respondent agrees to send a written apology to Ms. Barbara Baker, Court Administrator at the Dallas, Texas, Immigration Court, within 30 days of the approval of this Settlement Agreement, with copies of his written apology sent to both the Adjudicating Official and OGC/EOIR Disciplinary Counsel.

'6. Respondent agrees to arrange for the submission of quarterly reports for one (1) year from the date of the approval of this Settlement Agreement from the mental health professional treating him for his bipolar condition. Such reports shall be sent to EOIR Disciplinary Counsel at the address below. Respondent agrees to continue with the treatment plan set forth by his treating mental health professional, including therapy, drug treatment, and any other recommended course of treatment. If Respondent fails to continue under the care of a mental health professional or continue with the treatment plan developed for him, OGC may move to reopen this matter and seek a six-month suspension.'

"14. On May 4, 2009, the Adjudicating Official approved the Settlement Agreement and publicly censured the Respondent.

"15. On May 26, 2009, through counsel, the Respondent selfreported the incident to the disciplinary authorities in Kansas and Nebraska.

"16. On January 8, 2010, the Nebraska Supreme Court issued an opinion, imposing public reprimand on the Respondent.

## "CONCLUSIONS OF LAW

"1. Based upon the findings of fact and the Respondent's stipulation, the Hearing Panel concludes as a matter of law that the Respondent violated KRPC 3.5(d) and KRPC 8.4(d), as detailed below.

"2. KRPC 3.5(d) provides, in pertinent part, '[a] lawyer shall not: . . . engage in undignified or discourteous conduct degrading to a tribunal.' In this case, the Respondent repeatedly engaged in 'undignified or discourteous conduct degrading to a tribunal' when he engaged in a confrontational and disrespectful conversation with Ms. Baker. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 3.5(d).

"3. 'It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice.' KRPC 8.4(d). In this case, the Respondent engaged in 'conduct that is prejudicial to the administration of justice'

when he engaged in a confrontational and disrespectful conversation with Ms. Baker. As such, the Hearing Panel concludes that the Respondent violated KRPC 8.4(d).

## "AMERICAN BAR ASSOCIATION
## "STANDARDS FOR IMPOSING LAWYER SANCTIONS

"In making this recommendation for discipline, the Hearing Panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"*Duty Violated.* The Respondent violated his duty to the public and to the legal profession to maintain his personal integrity.

"*Mental State.* The Respondent negligently violated his duty.

"*Injury.* As a result of the Respondent's misconduct, the Respondent caused potential injury to Ms. Luphahla, the public, and the legal profession.

"*Aggravating or Mitigating Factors.* Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factors present:

"*Prior Disciplinary Offenses.* The Respondent's prior disciplinary history relates only to the discipline imposed by the EOIR and the Nebraska Supreme Court, based upon the same facts as the instant case.

"*Substantial Experience in the Practice of Law.* The Respondent was admitted to the practice in 1991. At the time of the misconduct, the Respondent had been practicing law for 16 years. Sixteen years constitutes substantial experience in the practice of law.

"Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following mitigating circumstances present:

"*Absence of a Prior Disciplinary Record.* Other than discipline imposed based upon the facts in the instant case, the Respondent has not previously been disciplined.

"*Absence of a Dishonest or Selfish Motive.* The Respondent's misconduct was not motivated by dishonesty or selfishness.

"*Personal or Emotional Problems if Such Misfortunes Have Contributed to Violation of the Kansas Rules of Professional Conduct.* The Respondent has been diagnosed with bipolar disorder. It appears that the three telephone conversations with Ms. Baker occurred during a time when the Respondent was experiencing a 'manic' phase of the bipolar disorder. Thus, the mental health disorder may have contributed to the misconduct.

*"Timely Good Faith Effort to Make Restitution or to Rectify Consequences of Misconduct.* Shortly after the Respondent's confrontational and disrespectful conversations, he sought assistance and learned that he suffered from bipolar disorder. The Respondent has obtained treatment for the disorder. The Respondent continues in treatment, to date.

*"Imposition of Other Penalties or Sanctions.* The Respondent has been censured by the EOIR and by the Nebraska Supreme Court for the same misconduct.

· :"In addition to the abovecited factors, the Hearing Panel has thoroughly examined and considered the following Standard:

'6.23 Reprimand is generally appropriate when a lawyer negligently fails to comply with a court order or rule, and causes injury or potential injury to a client or other party, or causes interference or potential interference with a legal proceeding.'

### "RECOMMENDATION

"The Disciplinary Administrator recommended that the Respondent be censured and the censure be published in the Kansas Reports. The Respondent joined the Disciplinary Administrator's recommendation for published censure.

"Standard 6.23 is applicable to this case. Based upon this standard, the significant mitigating factors, the minimal aggravating factors, as well as the level of discipline imposed by the EOIR and the Nebraska Supreme Court, the Hearing Panel unanimously recommends that the Respondent be censured by the Kansas Supreme Court. The Hearing Panel further recommends that the censure be published in the Kansas Reports.

"Costs are assessed against the Respondent in an amount to be certified by the Office of the Disciplinary Administrator."

### DISCUSSION

In a disciplinary proceeding, this court considers the evidence, the findings of the disciplinary panel, and the arguments of the parties and determines whether violations of KRPC exist and, if they do, what discipline should be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Lober,* 288 Kan. 498, 505, 204 P.3d 610 (2009); see Supreme Court Rule 211(f) (2010 Kan. Ct. R. Annot. 327). Clear and convincing evidence is " 'evidence that causes the factfinder to believe that "the truth of the facts asserted is highly probable." ' " 288 Kan. at 505 (quoting *In re Dennis,* 286 Kan. 708, 725, 188 P.3d 1 [2008]). The evidence before the hearing panel establishes the charged misconduct of the respondent by clear and convincing evidence and supports the panel's conclusions of law.

Regarding the discipline imposed, the panel's recommendation is advisory only and does not limit this court's discretion to impose other discipline. Supreme Court Rule 212(f) (2010 Kan. Ct. R. Annot. 344). Notwithstanding that discretion, we find the hearing panel's recommendations to be appropriate here.

CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that Bart A. Chavez, be and is hereby disciplined by published censure in accordance with Supreme Court Rule 203(a)(3) (2010 Kan. Ct. R. Annot. 276).

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to the respondent and that this opinion be published in the official Kansas Reports.