IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 112,923

In the Matter of JAMES E. RUMSEY,
*Respondent*.

ORIGINAL PROCEEDING IN DISCIPLINE

Original proceeding in discipline. Opinion filed February 27, 2015. Three-year suspension, which is stayed during a probationary period of 3 years.

*Alexander M. Walczak*, Deputy Disciplinary Administrator, argued the cause, and *Stanton A. Hazlett*, Disciplinary Administrator, was with him on the formal complaint for the petitioner.

*Jerry K. Levy*, of Law Offices of Jerry K. Levy, P.A., of Lawrence, argued the cause, and *James E. Rumsey*, respondent, argued the cause pro se.

*Per Curiam*: This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, James E. Rumsey, of Lawrence, an attorney admitted to the practice of law in Kansas in 1972.

On April 8, 2014, the office of the Disciplinary Administrator filed a formal complaint against the respondent alleging violations of the Kansas Rules of Professional Conduct (KRPC). On June 17, 2014, the respondent filed a motion to answer out of time, which was granted, and filed an answer on June 20, 2014. A hearing was held on the complaint before a panel of the Kansas Board for Discipline of Attorneys on October 1-2, 2014, where the respondent was personally present and was represented by counsel. The hearing panel determined that respondent violated KRPC 3.5(d) (2014 Kan. Ct. R. Annot.

1

626) (engaging in undignified or discourteous conduct degrading to a tribunal); 8.1(a) (2014 Kan. Ct. R. Annot. 670) (false statement in connection with disciplinary matter); 8.4(c) (2014 Kan. Ct. R. Annot. 680) (engaging in conduct involving misrepresentation); and 8.4(d) (2014 Kan. Ct. R. Annot. 680) (engaging in conduct prejudicial to the administration of justice).

Upon conclusion of the hearing, the panel made the following findings of fact and conclusions of law, together with its recommendation to this court:

"*Findings of Fact*

. . . .

"12.    The Douglas County District Court appointed the Respondent to represent [R.C.] in a felony criminal case, case number 2012TR2231, before the Honorable Michael J. Malone. Kathleen M. Britton and Andrew D. Bauch, Douglas County Assistant District Attorneys were assigned to prosecute the case.

"13.    [R.C.] was charged with the offenses of felony driving under the influence and misdemeanor open container.

"14.    On September 19, 2012, the court conducted a preliminary hearing in [R.C.'s] case.

"15.    One of the witnesses who testified at the preliminary hearing was [S.R.]. At the time he testified, [S.R.] was a resident of the Lawrence, Kansas, area.

"16.    Sometime after the preliminary hearing, [S.R.] moved to the state of Pennsylvania.

2

"17.    The Douglas County District Attorney's office initially intended to call [S.R.] as a witness at [R.C.'s] trial. In March 2013, a subpoena was issued by the Douglas County District Attorney's office to [S.R.] at his Pennsylvania address.

"18.    The trial of [R.C.] was scheduled to begin July 8, 2013, before Judge Malone.

"19.    Approximately one (1) week before the July 8, 2013, trial, Ms. Britton and Mr. Bauch decided not to call [S.R.] as a witness. [S.R.] was contacted and informed that he did not need to appear at the trial.

"20.    Neither Ms. Britton nor Mr. Bauch had any conversations with the Respondent prior to the trial about whether [S.R.] would be called as a witness.

"21.    The Respondent never inquired of Ms. Britton or Mr. Bauch as to whether [S.R.] would appear or not appear to testify at the trial.

"22.    The Respondent did not issue a subpoena to compel [S.R.]'s presence at trial.

"23.    The [R.C.] trial commenced with jury selection on the morning of July 8, 2013. The trial was recessed after jury selection until 3:00 p.m. that same day, in part, so that the Respondent could attend a doctor's appointment for a severely infected right big toe.

"24.    When the trial reconvened in the afternoon, the Respondent and the Assistant District Attorneys argued motions out of the presence of the jury. One of the issues was a Motion in Limine in which Ms. Britton contended that because [S.R.] would not be present as a live witness, the Respondent should be precluded from referring to or reading [S.R.]'s preliminary hearing testimony during the trial.

3

"25. The Respondent aggressively argued that [S.R.]'s testimony would be clearly exculpatory, and that he assumed [S.R.] would appear live at trial because he had been subpoenaed by the state.

"26. The court ruled against the Respondent's position on the Motion in Limine and precluded [S.R.]'s preliminary hearing testimony from being offered by the Respondent. The Respondent was frustrated and angry at the court's decision, and he believed the prosecution had deliberately engaged in an obstructive tactic by making it appear that [S.R.] had been subpoenaed to appear at the trial, and then releasing him from his subpoena, without notifying the Respondent.

"27. After counsel had argued their positions on the Motion in Limine, as the Respondent was returning to his seat at counsel table, the Respondent called Ms. Britton a 'dirty bitch.' The comment was heard by Ms. Britton, as well as other individuals in the courtroom who were seated behind the prosecutor's counsel table. Neither Judge Malone nor his court reporter heard the Respondent's comment.

"28. Ms. Britton was surprised and offended by the Respondent's comment and asked to approach the bench to raise the issue with Judge Malone. Ms. Britton told Judge Malone that the Respondent had called her a 'bitch,' to which the Respondent indicated that he in fact had called her a 'dirty bitch.' The Respondent then apologized to Ms. Britton, although Ms. Britton did not initially believe the Respondent had apologized to her. However, Judge Malone confirmed that the Respondent had apologized.

"29. On the following day of the trial, Judge Malone spoke to the Respondent concerning the Respondent's comment towards Ms. Britton. Judge Malone advised the Respondent that he should self-report the incident to the Office of the Disciplinary Administrator, or Judge Malone would report the incident.

"30. On July 11, 2013, the Respondent, in a letter to the Disciplinary Administrator, reported his conduct during the Collins trial.

4

"31.     On July 31, 2013, the Douglas County District Attorney filed a complaint against the Respondent for his conduct on July 8, 2013.

"32.     The Respondent's self-reported conduct and the complaint of the Douglas County District Attorney were docketed for investigation by the Office of the Disciplinary Administrator. Steven D. Ruse, attorney, conducted the investigation into the matters. At the time, the primary issues to be investigated were whether the Respondent's failure to have [S.R.] available to testify at [R.C.'s] trial, and the Respondent's comment to Ms. Britton were Kansas Rules of Professional Conduct (KRPC) violations. [Footnote:  The failure by the Respondent to do what was necessary to have (S.R.) available at (R.C.'s) trial was alleged by the Disciplinary Administrator to be a violation of KRPC 1.1-Competence and KRPC 1.3-Diligence, because the Respondent consistently contended and argued that (S.R.)'s testimony was clearly exculpatory. During the hearing on the formal complaint, following the presentation of the Disciplinary Administrator's case, the hearing panel concluded that clear and convincing evidence had not been presented to establish that the Respondent violated KRPC 1.1 and KRPC 1.3. Accordingly, the hearing panel dismissed the allegations that the Respondent violated KRPC 1.1 and KRPC 1.3.]

"33.     In a letter, dated November 11, 2013, the Respondent submitted to the Disciplinary Administrator, a document entitled Addendum to Response to an earlier response to the complaint. The Respondent's Addendum to Response included as an exhibit, the Affidavit of [R.C.] (Affidavit). The Affidavit was procured by the Respondent for the purpose to show that [R.C.] was satisfied with the Respondent's representation of [R.C.] at his trial, apparently in response to the claims that the Respondent possibly violated KRPC 1.1 and KRPC 1.3.

"34.     The Respondent took the Affidavit he had prepared to [R.C.'s] home, where [R.C.] signed the Affidavit, on November 16, 2013. The Affidavit was not signed in the presence of a notary public.

"35.    The Affidavit represents it was signed by [R.C.], under oath, in the presence of a notary public, April C. Oakes, the Respondent's secretary, on November 18, 2013.

"36.    On November 18, 2013, Ms. Oakes notarized [R.C.'s] signature on the Affidavit. Ms. Oakes knew that [R.C.] neither signed the Affidavit in her presence nor did she have any personal knowledge whether [R.C.] swore to the accuracy of the Affidavit's contents. Ms. Oakes did recognize [R.C.'s] signature.

"37.    The Respondent admitted that the Affidavit was not signed in the presence of a notary public, but the Respondent indicated that he did not know that having the Affidavit subsequently notarized by Ms. Oakes was improper. The Respondent also indicated he did not intend to deceive anyone with submission of the Affidavit to the Disciplinary Administrator. The Respondent characterized his conduct as negligence.

"38.    Ms. Oakes indicated she knew notarizing [R.C.'s] signature in the manner she did violated the laws pertaining to notaries. She further indicated it was not the first time she had notarized a signature in that manner, while employed by the Respondent. She also testified that the Respondent did not directly tell her to notarize the Affidavit.

"39.    The actual contents of the Affidavit became immaterial as the Affidavit's content went to the Respondent's competence at the time of [R.C.'s] trial, and since the allegations that the Respondent violated KRPC 1.1 and KRPC 1.3 were dismissed, the accuracy of the Affidavit is no longer material.

"*Conclusions of Law*

"40.    Based upon the findings of fact, the hearing panel concludes as a matter of law that the Respondent violated KRPC 3.5(d), KRPC 8.1(a), KRPC 8.4(c), and KRPC 8.4(d), as detailed below. The Respondent stipulated to violations of KRPC 3.5(d), KRPC

6

8.1(a) and KRPC 8.4(c). (The Respondent's stipulation to a violation of KRPC 8.4[c] is only to engaging in conduct involving misrepresentation.)

"KRPC 3.5(d)

"41.    '*A lawyer shall not . . . engage in undignified or discourteous conduct degrading to a tribunal.*'

"The Respondent engaged in undignified or discourteous conduct degrading to the court and the legal system when he referred to opposing counsel on July 8, 2013, in an offensive and unprofessional manner. The Respondent candidly admitted his conduct almost immediately after he made the comment to Ms. Britton. Clearly, such a comment has no place in judicial proceedings. When Ms. Britton testified at the hearing, she was still visibly upset by the comment. It is interesting to note, that during cross-examination, the Disciplinary Administrator questioned two of the Respondent's witnesses, Douglas County District Court Judge Paula B. Martin and Sherri E. Loveland, attorney, Lawrence, Kansas, about similar conduct by the Respondent towards them. Judge Martin testified that in approximately 1981, the Respondent called her a 'bitch' when she was in a trial as opposing counsel. Ms. Loveland testified that approximately 30 years prior, the Respondent had called her a 'fucking bitch' during a court proceeding. While both of the incidents testified to by Judge Martin and Ms. Loveland are very remote in time to the incident which occurred in July 2013, it does reveal that the Respondent has a history of this type of conduct. The hearing panel therefore concludes that the Respondent violated KRPC 3.5(d).

"KRPC 8.1

"42.    '*An applicant for admission to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:  (a) knowingly make a false statement of material fact.*'

"The Respondent stipulated to a violation of KRPC 8.1(a) as a result of his conduct in submitting the Affidavit of [R.C.] to the Disciplinary Administrator in this

7

case, which he knew was not properly notarized, nor did [R.C.] sign the Affidavit after taking an oath. The notarizing of the Affidavit was in violation of K.S.A. 53-503. The hearing panel therefore concludes that the Respondent violated KRPC 8.1(a).

"KRPC 8.4(c)

"43.	'It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation.'

"The Respondent stipulated to a violation of KRPC 8.4(c) through a misrepresentation that the Affidavit of [R.C.] had been signed in front of a notary public and that [R.C.] had taken an oath prior to signing the Affidavit. The hearing panel concludes that the Respondent violated KRPC 8.4(c).

"KRPC 8.4(d)

"44.	'It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice.'

"The Respondent engaged in conduct that was prejudicial to the administration of justice through his conduct towards Ms. Britton. Not only did Ms. Britton hear the comment, but one witness for the Disciplinary Administrator, Caroline Gurney, an intern in the Douglas County District Attorney's office at the time of the trial on July 8, 2013, heard the Respondent's comment. Ms. Gurney testified that she found the comment to be outrageous. Ms. Britton also testified that the property owner victim in the [R.C.] trial heard Respondent's comment and that he was so offended he left the trial. Judge Malone testified at the hearing that had he actually heard the Respondent make the comment, he would have found the Respondent in contempt. The hearing panel concludes that the Respondent violated KRPC 8.4(d). [See, *In re Chavez*, 292 Kan. 45, 251 P.3d 628 (2011); *In re Rathbun*, 285 Kan. 137, 169 P.3d 329 (2007).]

8

"45.    In making this recommendation for discipline, the hearing panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (Standards). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"46.    *Duty Violated*. The Respondent violated his duty to the legal system as a result of his conduct towards Ms. Britton. The Respondent also violated his duty to the legal profession and the public as a result of submitting an improperly notarized and sworn affidavit to the Disciplinary Administrator.

"47.    *Mental State*. The Respondent knowingly violated his duty. It should be noted that the Respondent testified that he did not know having the Affidavit of [R.C.] notarized in the manner it was notarized, was improper, but he testified that he knowingly asked [R.C.] to sign the Affidavit and he knowingly submitted it to his secretary for her signature, aware that she had not seen [R.C.] sign the Affidavit.

"48.    *Injury*. As a result of the Respondent's misconduct, the Respondent caused actual injury to the legal system and the legal profession.

"49.    *Aggravating or Mitigating Factors*. Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel found the following aggravating factors present:

"50.    *Prior Disciplinary Offenses*. The Respondent had been disciplined on six (6) prior occasions. Discipline in 1977, 1994, 1999, 2000, and 2001 resulted in informal admonitions from the Disciplinary Administrator's office. Discipline in 2003, the most recent in time, resulted in the Respondent being suspended for one (1) year. The hearing panel finds that the disciplines imposed in 1977, 1994, and 1999 are remote in time to the

9

current matter. The disciplines imposed in 2000, 2001, and 2003 are more relevant, especially the one (1) year suspension imposed by the Supreme Court in 2003.

"51.      *Multiple Offenses*. The Respondent violated four (4) rules of the Kansas Rules of Professional Conduct. Therefore, the hearing panel concludes that the Respondent committed multiple offenses.

"52.      *Submission of False Evidence, False Statements, or Other Deceptive Practices during the Disciplinary Process*. The Respondent admitted to submitting the Affidavit of [R.C.] that falsely attested that it was signed and sworn in front of a notary. However, the hearing panel does not believe that the Affidavit was offered to mislead or deceive the Disciplinary Administrator or the hearing panel.

"53.      *Substantial Experience in the Practice of Law*. At the time the KRPC violations occurred, the Respondent had been practicing law for approximately forty-one (41) years. Therefore, the hearing panel finds that the Respondent had substantial experience in the practice of law.

"54.      Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel found the following mitigating circumstances present:

"55.      *Absence of a Dishonest or Selfish Motive*. The Respondent's misconduct does not appear to have been motivated by dishonesty or selfishness.

"56.      *Personal or Emotional Problems if Such Misfortunes Have Contributed to Violations of the Kansas Rules of Professional Conduct*. The Respondent testified that on the day [R.C.'s] trial began, July 8, 2013, he was experiencing severe, almost debilitating pain in his right big toe. As a result of a delay in seeking medical attention for a blister on the toe, the Respondent had developed a very serious medical condition that ultimately resulted in rather significant treatment after July 8, 2013. The Respondent had received information from his doctor prior to the incident on July 8, 2013, that treatment

10

for the toe condition might include amputation. Dr. Shaffia Laue, a psychiatrist, testified on behalf of the Respondent that most people would have called the court the day of the trial on July 8, 2013, and indicated that they could not attend the trial because of the pain in the toe. Dr. Laue further testified that in her opinion, the comment the Respondent made to Ms. Britton was a result of his medical condition, the pain in his toe, and the frustration that he just experienced with the judge ruling against allowing the preliminary hearing testimony of [S.R.] during the trial. The Respondent testified that the information that he had just received about the possibility of having his toe amputated was frightening to him, and that anxiety, together with the pain, led to his comment to Ms. Britton. Accordingly, the hearing panel finds that the Respondent's mental and physical issues contributed to his misconduct on July 8, 2013, although the medical condition related to the Respondent's toe does not in any manner excuse or justify his conduct towards Ms. Britton.

"57.    *Timely Good Faith Effort to Make Restitution or to Rectify Consequences of Misconduct.* The Respondent timely admitted his inappropriate comment to Judge Malone, and contemporaneously apologized to Ms. Britton. After hearing Ms. Britton testify at the present hearing about how upset she was and still is over the Respondent's comment, the Respondent stated he would apologize again to her, 'today, and if not today, tomorrow.' (The hearing panel believes an apology from the Respondent to Ms. Britton would be appropriate.)

"58.    *The Present and Past Attitude of the Attorney as Shown by His or Her Cooperation During the Hearing and His or Her Full and Free Acknowledgment of the Transgressions.* The Respondent cooperated during the hearing and fully and freely acknowledged his misconduct.

"59.    *Previous Good Character and Reputation in the Community Including Any Letters from Clients, Friends, and Lawyers in Support of the Character and General Reputation of the Attorney.* The Respondent offered several witnesses, including Judge Malone, Judge Martin, Michael Clark, attorney, and David R. Mouille, clinical psychologist, that the Respondent was an excellent attorney in the area of criminal law, and mental health issues as they relate to criminal defense practice. Judge Malone

11

testified that it would be a loss to not have the Respondent as court appointed counsel in serious felony cases in Douglas County. Judge Martin also testified that the Respondent respects the court and the legal system, and that he was very thorough in his representation of criminal defendants.

"60.     *Remorse*. At the hearing on the formal complaint, the Respondent expressed remorse for his conduct, and indicated that he deeply regretted what had happened.

"61.     *Remoteness of Prior Offenses*. The hearing panel finds that the discipline imposed in 1977, 1994, and 1999 are remote in time.

"62.     In addition to the above-cited factors, the hearing panel has thoroughly examined and considered the following Standards:

'5.13     Reprimand is generally appropriate when a lawyer knowingly engages in any other conduct that involves dishonesty, fraud, deceit, or misrepresentation and that adversely reflects on the lawyer's fitness to practice law.

'6.12     Suspension is generally appropriate when a lawyer knows that false statements or documents are being submitted to the court or that material information is improperly being withheld, and takes no remedial action, and causes injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding.

'6.13     Reprimand is generally appropriate when a lawyer is negligent either in determining whether statements or documents are false or in taking remedial action when material information is being withheld, and causes injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding.

12

'6.14    Admonition is generally appropriate when a lawyer engages in an isolated instance of neglect in determining whether submitted statements or documents are false or in failing to disclose material information upon learning of its falsity, and causes little or no actual or potential injury to a party, or causes little or no adverse or potentially adverse effect on the legal proceedings.

'7.3    Reprimand is generally appropriate when a lawyer negligently engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public, or the legal system.'

"*Recommendation*

"63.    The Disciplinary Administrator recommended that the Respondent be suspended for a period of two (2) years. The Disciplinary Administrator indicated that the Respondent needed a 'period of time to reflect upon his conduct.' The Disciplinary Administrator also argued that the Respondent engaged in deceitful conduct. The Respondent recommended published censure.

"64.    Based upon the standards listed above, it appears to the hearing panel that the Respondent should be disciplined by published censure. However, the hearing panel is very concerned about the Respondent's prior disciplinary history. Before the present case, the Respondent had six (6) previous disciplinary offenses, the most recent being in 2003 which involved fourteen (14) violations of the KRPC. The Supreme Court noted in the Respondent's 2003 disciplinary case, the following:

'We are particularly concerned about Rumsey's baffling inability to comprehend and follow the KRPC Rules or his shocking indifference to them as shown by his repeated violations. After five prior admonitions and 25 years of practice, one would think that Rumsey could figure out how to operate within the KRPC. On the contrary, Rumsey has

13

demonstrated his inability or indifference by not only repeating his violations, but by escalating, rather than diminishing, the number of violations. We agree with Chairman Ridenour when he stated that Rumsey is a "loose cannon" who "alternately ignores and then pushes around his clients, commingles clients' funds with his own, and fails to advise clients when he has terminated his representation of them." We believe that any form of discipline short of a suspension would be as ineffective as the previous discipline Rumsey has received.' [*In re Rumsey*, 276 Kan. 65, 77, 71 P.3d 1150 (2003).]

"The hearing panel is not sure the Respondent has yet figured out how to operate within the KRPC. Some of the previous disciplinary cases involve the same violations of the KRPC that are present in the current case. In fact, the Respondent's first disciplinary case in 1977 involved a violation of KRPC 3.5(d) when he called a party an inappropriate name during a court proceeding. All indications are that the Respondent is a talented criminal defense attorney who provides a valuable service to the district courts in and around Douglas County, Kansas. While the Respondent has characterized his conduct as a breach of civility when dealing with opposing counsel, it certainly appears to the hearing panel that the Respondent still has difficulty practicing law within the rules and professional standards of the KRPC. Notwithstanding the prior KRPC transgressions of the Respondent, based upon testimony offered at the hearing that the Respondent's conduct has significantly improved since his one (1) year suspension in 2003, and based upon the findings of fact, conclusions of law, and the Standards listed above, the hearing panel unanimously recommends that the Respondent be disciplined by published censure. The hearing panel further recommends that the censure be published in the official Kansas Reports.

"65.     Costs are assessed against the Respondent in an amount to be certified by the Office of the Disciplinary Administrator."

14

In a disciplinary proceeding, this court considers the evidence, the findings of the disciplinary panel, and the arguments of the parties and determines whether violations of KRPC exist and, if they do, what discipline should be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Foster*, 292 Kan. 940, 945, 258 P.3d 375 (2011); see Supreme Court Rule 211(f) (2014 Kan. Ct. R. Annot. 363). Clear and convincing evidence is "'evidence that causes the factfinder to believe that "the truth of the facts asserted is highly probable."'" *In re Lober*, 288 Kan. 498, 505, 204 P.3d 610 (2009) (quoting *In re Dennis*, 286 Kan. 708, 725, 188 P.3d 1 [2008]).

Respondent was given adequate notice of the formal complaint, and his request to file an answer out of time was granted. Additionally, he received adequate notice of the hearing before the panel and the hearing before this court. The respondent did not file exceptions to the hearing panel's final hearing reports. As such, the findings of fact are deemed admitted. Supreme Court Rule 212(c) and (d) (2014 Kan. Ct. R. Annot. 383).

The evidence before the hearing panel establishes by clear and convincing evidence the charged misconduct violated KRPC 3.5(d) (2014 Kan. Ct. R. Annot. 626) (engaging in undignified or discourteous conduct degrading to a tribunal); 8.1(a) (2014 Kan. Ct. R. Annot. 670) (false statement in connection with disciplinary matter); 8.4(c) (2014 Kan. Ct. R. Annot. 680) (engaging in conduct involving misrepresentation); and 8.4(d) (2014 Kan. Ct. R. Annot. 680) (engaging in conduct prejudicial to the administration of justice). And the evidence supports the panel's conclusions of law. We adopt the panel's conclusions.

At the hearing before this court, at which the respondent appeared, the office of the Disciplinary Administrator recommended that the respondent be suspended for a period of 1 year. The respondent recommended published censure. The hearing panel also recommended published censure.

This court is not bound by the recommendations of the Disciplinary Administrator or the hearing panel. *In re Mintz*, 298 Kan. 897, 911-12, 317 P.3d 756 (2014). The court bases each disciplinary sanction on the specific facts and circumstances of the violations and aggravating and mitigating circumstances presented in the case. 298 Kan. at 912. While prior cases may have some bearing on the sanctions that the court elects to impose, those prior cases must give way to consideration of the unique circumstances that each individual case presents. *In re Busch*, 287 Kan. 80, 86-87, 194 P.3d 12 (2008). This court concerns itself less with the sanctions that were appropriate in other cases and more with which discipline is appropriate under the facts of the case before us. *In re Dennis*, 286 Kan. at 738.

Here, respondent stipulated that he had committed a misrepresentation relating to evidence he presented in his disciplinary proceeding. Any misrepresentation by an attorney—indeed, any act negatively reflecting on the veracity of an attorney—raises grave concerns. Importantly, those concerns are heightened when the misrepresentation relates to evidence in a judicial or administrative proceeding. Respondent also admitted to undignified and discourteous conduct degrading to a tribunal, and this discourteous act echoed similar conduct for which he had been previously disciplined. Yet, respondent suggests a published censure will cause him to reform. Sadly, respondent's actions speak louder than his words. After all, he stands before this court for violating the KRPC's fundamental principles—veracity and professionalism—despite having been disciplined by this court on six prior occasions. As the hearing panel noted: "Respondent still has difficulty practicing law within the rules and professional standards of the KRPC." Under

16

those circumstances, we cannot accept published censure as an appropriate discipline. Respondent's disciplinary history suggests the need for a harsher punishment.

While the Disciplinary Administrator's proposal of a 1-year suspension is certainly more severe, it seems to fall short of ensuring long-term compliance with the KRPC. History certainly indicates a suspension would have an impact, given that the hearing panel cited evidence suggesting that respondent's 1-year suspension in 2003 led to "significantly improved" conduct. Yet, while respondent apparently took several steps toward the destination of professionalism, the current complaints demonstrate he either made a U-turn or, at least, a wrong turn on his journey. It seems respondent needs a constant reminder—turn-by-turn navigation—to ensure that he stays on his path and reaches his destination. Simply suspending respondent and allowing his reinstatement in 1 year would not assure that he receives that needed guidance. The best navigation system available in our disciplinary system is probation. Probation could provide respondent with a practice supervisor who could remind him of the correct path, discuss situations, and help plot the turns that lead to, and not away from, the destination. Additionally, a mental health therapist, such as the one with whom respondent has consulted, could provide guidance on dealing with stressful situations; not only could a therapist serve as a guide, he or she would hopefully help instill mechanisms for self-control.

We typically consider probation only when a probation plan has been timely filed with the hearing panel and there has been full compliance with Supreme Court Rule 211(g) (2014 Kan. Ct. R. Annot. 363). While we rarely, if ever, allow a respondent to ask for suspension of those requirements, we have on occasion adopted probation *sua sponte* when we believe it best accomplishes retributive and rehabilitative goals commensurate with the violations and a respondent's disciplinary history. See Supreme Court Rule 203(a)(5) (2014 Kan. Ct. R. Annot. 307) ("Misconduct shall be grounds for . . . [a]ny

17

other form of discipline or conditions . . . , whether or not recommended by a hearing panel, which the Supreme Court deems appropriate."). We see this as such a situation.

Thus, instead of adopting the discipline suggested by respondent or the Disciplinary Administrator, a majority of the court elects to impose a 3-year suspension. However, we elect to stay imposition of that discipline and place respondent on probation for a 3-year period from the date a probation order is entered by this court. A minority of the court would impose a harsher discipline in light of the violation of KRPC 8.4(c) (engaging in conduct involving misrepresentation) and respondent's prior disciplinary history.

Detailing a probation plan in this opinion is hampered by the lack of compliance with Rule 211(g), however. We, therefore, order respondent to submit a plan of probation to the Disciplinary Administrator within 14 days of the filing of this decision. The plan must include, at a minimum, mental health therapy, some level of practice supervision, and a requirement to immediately self report any violation of the KRPC. If the parties cannot agree on a probation plan within 30 days of the filing of this decision, both parties must submit a proposal to the court. If the parties agree, they may jointly submit a proposed order of probation or simply indicate their agreement with the other party's proposal.

CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that James E. Rumsey be suspended from the practice of law in the state of Kansas, in accordance with Supreme Court Rule 203(a)(2) and (5), for a 3-year period, but imposition of that discipline shall be stayed and respondent placed on probation for a 3-year period from the date on which an order of probation is filed.

18

IT IS FURTHER ORDERED that if James E. Rumsey engages in further misconduct during his probationary period, a show cause order shall issue and this court may immediately suspend him from the practice of law pending further formal proceedings.

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to the respondent and that this opinion be published in the official Kansas Reports.