IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 118,527

In the Matter of LINDA S. TRIGG, DISTRICT MAGISTRATE JUDGE,
*Respondent*.

ORIGINAL PROCEEDING RELATING TO JUDICIAL CONDUCT

Original proceeding in discipline. Opinion filed April 6, 2018. Findings of the hearing panel are affirmed.

*Todd N. Thompson*, of Thompson Warner, P.A., of Lawrence, argued the cause for the Commission on Judicial Qualifications.

No appearance by *Linda S. Trigg,* respondent.

PER CURIAM:  This is an uncontested original disciplinary proceeding against the respondent, Linda S. Trigg, former District Magistrate Judge of the 10th Judicial District, sitting in Johnson County. The matter was investigated by Panel B of the Kansas Commission on Judicial Qualifications (Commission), following which that panel docketed a notice of formal proceedings and formal complaint on July 10, 2017, against respondent and gave due notice. See Supreme Court Rule 611(b) (2018 Kan. S. Ct. R. 475) (discussing procedure for filing of formal proceedings). The complaint alleged respondent committed various violations of Canons 1 and 2 of the Kansas Code of Judicial Conduct (the Code), as will be discussed below. See Supreme Court Rule 601B (2018 Kan. S. Ct. R. 425) (containing the Code). Respondent did not file an answer to the complaint.

The matter was heard on October 6, 2017, by Panel A of the Commission. Respondent received and acknowledged receipt of proper notice and notified the Panel by email the day before that she would not attend the hearing. At the hearing the

1

Commission's examiner presented evidence and argument in support of the formal complaint. Upon conclusion of the hearing, Panel A made the following findings of fact and conclusions of law, together with its recommended disposition to this court:

"FINDINGS OF FACT

"1.     On September 7, 2016, Respondent presided over a hearing in Johnson County Magistrate Court Department M-2 involving Case No. 10TR604, *State of Kansas v. Brandi Heather*.

"2.     The district attorney's office appeared through Zavier Andrews. Brandi Heather appeared pro se.

"3.     The transcript of the hearing on September 7, 2016, provides in its entirety:

'THE COURT:  Court will call 10TR604 State of Kansas v. Brandi Lee Heather. Are you Brandi Heather?

'THE DEFENDANT:  Yes.

'THE COURT:  Show Mr. Andrews for the State. Defendant appears in person, in custody, pro se.

'There's a motion to revoke your probation for failure to comply on file for various reasons. I find that sufficient. I revoke your probation and remand you to the custody of the Sheriff's Office to serve the balance of your sentence.

'We're adjourned. Parties may withdraw.'

"4.     The investigative panel requested Todd N. Thompson, Examiner, to investigate the matter. Respondent failed to respond to numerous efforts by the Examiner to contact her.

2

"5.    On March 24, 2017, the investigative panel issued a cease and desist order. Respondent received the order on March 25, 2017, but failed or refused to either (1) agree to comply with the order, or (2) refuse to accept the order.

"6.    Pursuant to Rule No. 611, Respondent was deemed to have refused the order and Panel B instituted formal proceedings.

"CONCLUSIONS OF LAW

"1.    The Notice of Formal Proceedings alleges that Respondent's conduct violated the provisions of Canon 1 and Canon 2 of the Rules of [the] Supreme Court [Relating] to Judicial Conduct.

"2.    CANON 1 of the Code of Judicial Conduct, Rule 601B, provides:

'A judge shall uphold and promote the *independence, integrity,* and *impartiality* of the judiciary, and shall avoid *impropriety* and the appearance of impropriety.'

"3.    RULE 1.1, 'Compliance with the *Law*,' provides:

'A judge shall comply with the *law* and the Kansas Code of Judicial Conduct.'

"4.    RULE 1.2, 'Promoting Confidence in the Judiciary,' provides:

'A judge shall act at all times in a manner that promotes public confidence in the *independence, integrity,* and *impartiality* of the judiciary, and shall avoid *impropriety* and the appearance of impropriety.

'COMMENT

'[1]    Public confidence in the judiciary is eroded by improper conduct
        and conduct that creates the appearance of impropriety. This
        principle applies to both the professional and personal conduct of
        a judge.

. . . .

'[3]    Conduct that compromises or appears to compromise the
        independence, integrity, and impartiality of a judge undermines
        public confidence in the judiciary. Because it is not practicable
        to list all such conduct, the Rule is necessarily cast in general
        terms.

. . . .

'[5]    Actual improprieties include violations of law, court rules, or
        provisions of this Code. The test for appearance of impropriety is
        whether the conduct would create in reasonable minds a
        perception that the judge violated this Code or engaged in other
        conduct that reflects adversely on the judge's honesty,
        impartiality, temperament, or fitness to serve as a judge.'

"5.     Rule 601B defines 'Impropriety' as follows:

'"Impropriety" includes conduct that violates the law, court rules, or provisions of
this Code, and conduct that undermines a judge's independence, integrity, or
impartiality. See Cannon 1 and Rule 2.2.'

"6.     Rule 601B defines 'Integrity' as follows:

'"Integrity" means probity, fairness, honesty, uprightness, and soundness of
character.'

4

"7.     CANON 2 of the Code of Judicial Conduct, Rule 601B, provides:

'A judge shall perform the duties of judicial office *impartially*, competently, and diligently.'

"8.     RULE 2.2, *'Impartiality* and Fairness,' provides:

'A judge shall uphold and apply the *law*, and shall perform all duties of judicial office fairly and *impartially*.'

"9.     RULE 2.5, 'Competence, Diligence, and Cooperation,' provides:

'(A) A judge shall perform judicial and administrative duties, competently and diligently.

. . . .

'COMMENT

'[1]     Competence in the performance of judicial duties requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary to perform a judge's responsibilities of judicial office.

. . . .

'[4]     In disposing of matters promptly and efficiently, a judge must demonstrate due regard for the rights of parties to be heard and to have issues resolved without unnecessary cost or delay. A judge should monitor and supervise cases in ways that reduce or eliminate dilatory practices, avoidable delays, and unnecessary costs.'

"10.    RULE 2.6, 'Ensuring the Right to Be Heard,' provides:

'(A)    A judge shall accord to every person who has a legal interest in a proceeding, or that person's lawyer, the right to be heard according to *law*.

'COMMENT

'[1]    The right to be heard is an essential component of a fair and impartial system of justice. Substantive rights of litigants can be protected only if procedures protecting the right to be heard are observed.'

"11.    RULE 2.8, 'Decorum, Demeanor, and Communication [with Jurors],' provides:

'(B)    A judge shall be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, court staff, court officials, and others with whom the judge deals in an official capacity, and shall require similar conduct of lawyers, court staff, court officials, and others subject to the judge's direction and control.

'COMMENT

'[1]    The duty to hear all proceedings with patience and courtesy is not inconsistent with the duty imposed in Rule 2.5 to dispose promptly of the business of the court. Judges can be efficient and businesslike while being patient and deliberate.'

"12.    RULE 2.16, 'Cooperation with Disciplinary Authorities,' provides:

'(A)    A judge shall cooperate and be candid and honest with judicial and lawyer disciplinary agencies.

'COMMENT

'Cooperation with investigations and proceedings of judicial and lawyer discipline agencies, as required in paragraph (A), instills confidence in judges'

6

commitment to the integrity of the judicial system and the protection of the public.'

"13.     The Panel considered the evidence presented at the hearing, including the transcript of the hearing in Johnson County Court on September 7, 2016.

"14.     The Panel unanimously finds that Respondent's conduct, established by clear and convincing evidence, violated Rule[s] 1.1 and 1.2 of Canon 1; and Rules 2.2, 2.5, 2.6, 2.8, and 2.16 of Canon 2.

"DISPOSITION

"Pursuant to Supreme Court Rule 620 (2017 Kan. S. Ct. R. 477), based on the foregoing Findings of Fact and Conclusions of Law, and based on a unanimous vote of five members, the Panel recommends to the Supreme Court of the State of Kansas that Respondent be disciplined for the violations by public censure."

DISCUSSION

Respondent left the bench in the spring of 2017. But the primary misconduct occurred on September 7, 2016, while she was a judge. Accordingly, this court has jurisdiction over this matter. As we stated in *In re Henderson*, 306 Kan. 62, 71-72, 392 P.3d 56 (2017):

"The duty to protect the public from malfeasance by judges does not terminate the moment a judge steps down from office. A judge may not evade public responsibility and our jurisdiction based on the misconduct simply by stepping away from the bench when the misconduct is revealed. As the Alaska Supreme Court noted in [*In re*] *Johnstone*, [2 P.3d 1226 (Alaska 2000),] the purpose of judicial discipline is the protection of the public. One component of that protection is keeping the public informed of judicial transgressions and the consequences. This way, the public 'knows that its government actively investigates allegations of judicial misconduct and takes appropriate action when these allegations are proved. Judicial discipline thus protects the public by

7

fostering public confidence in the integrity of a self-policing judicial system.' 2 P.3d at 1234.

"The purpose of judicial discipline is to maintain the honor and dignity of the judiciary and the proper administration of justice rather than to punish the individual. *State ex rel. Comm'n on Judicial Qualifications v. Rome*, 229 Kan. 195, 206, 623 P.2d 1307 (1981). Public trust is essential to the effective operation of the judicial system, and the conduct of one judge may have a significant adverse impact on the public perception of the entire judicial system. *In re Robertson*, 280 Kan. 266, 272, 120 P.3d 790 (2005)."

Similar to *Henderson*, here

"The conduct of which the Respondent is accused . . . took place while he was occupying a position of judicial authority. In his response to the findings of the hearing panel and even after he resigned from his office, the Respondent refused to acknowledge wrongdoing. It would be disrespectful . . . to the public . . . if we were to abdicate our responsibility of judicial supervision by dismissing the complaint merely because the Respondent walked away from his responsibilities.

"We conclude that we have disciplinary jurisdiction over conduct that the Respondent engaged in while he was serving as a district court judge." *Henderson*, 306 Kan. at 72.

The hearing panel found that the charges against respondent had been proven by clear and convincing evidence. See Supreme Court Rule 620(a) (2018 Kan. S. Ct. R. 479) (requiring clear and convincing evidence in judicial qualifications proceeding); *In re Rome*, 218 Kan. 198, 206, 542 P.2d 676 (1975). Clear and convincing evidence is "'evidence that causes the factfinder to believe that "the truth of the facts asserted is highly probable."'" *In re Lober*, 288 Kan. 498, 505, 204 P.3d 610 (2009) (quoting *In re Dennis*, 286 Kan. 708, 725, 188 P.3d 1 [2008]).

Respondent was given adequate notice of the formal complaint, to which she chose not to file an answer. She was also given adequate notice of the panel hearing but elected not to appear. As for the Commission's findings of fact and conclusions of law, she decided not to file exceptions. Thus, the findings of fact and conclusions of law are conclusive. Supreme Court Rule 623(d) (2018 Kan. S. Ct. R. 480).

Like the Commission, we too conclude that respondent violated Rules 1.1 and 1.2 of Canon 1 (2018 Kan. S. Ct. R. 433), and Rules 2.2, 2.5, 2.6, 2.8, and 2.16 of Canon 2 (2018 Kan. S. Ct. R. 435), of the Kansas Code of Judicial Conduct. Because the respondent is no longer serving as a judge, the sanctions of suspension or removal are not available. See Kansas Const. Art. 3, § 15 ("judges shall be subject to . . . discipline, suspension and removal for cause by the supreme court after appropriate hearing"). But we readily conclude that the respondent's misconduct undermines the public's faith in the very judicial office whose duties she took a solemn oath to faithfully discharge. See Kansas Const. Art. 15, § 14; see also K.S.A. 54-106.

CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that this decision shall be published in the official Kansas Reports.

LUCKERT and JOHNSON, JJ., not participating.

MICHAEL J. MALONE, Senior Judge, assigned.[1]

PEGGY C. KITTEL, District Judge, assigned.[2]

---

[1] **REPORTER'S NOTE:** Senior Judge Malone was appointed to hear case No. 118,527 vice Justice Luckett under the authority vested in the Supreme Court by K.S.A. 20-2616.

[2] **REPORTER'S NOTE:** District Judge Kittel was appointed to hear case No. 118,527 vice Justice Johnson under the authority vested in the Supreme Court by art. 3, § 6(f) of the Kansas Constitution.