No. 102,410

In the Matter of WENDELL BETTS, *Respondent.*

(217 P.3d 30)

Opinion filed October 9, 2009.

*Alexander M. Walczak,* deputy disciplinary administrator, argued the cause and *Stanton A. Hazlett,* Disciplinary Administrator, was with him on the formal complaint for the petitioner.

*Wendell Betts,* respondent, argued the cause pro se.

*Per Curiam:* This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, Wendell Betts, of Topeka, an attorney admitted to the practice of law in Kansas in 1981.

On November 20, 2008, the office of the Disciplinary Administrator filed a formal complaint against the respondent alleging violations of the Kansas Rules of Professional Conduct (KRPC). The respondent's stipulation to the allegations of the formal complaint was received by the Disciplinary Administrator on February 23, 2009. A hearing was held on the complaint before a panel of the Kansas Board for Discipline of Attorneys on February 26, 2009, where the respondent was personally present. The hearing panel determined that respondent violated KRPC 8.4(b) (2008 Kan. Ct. R. Annot. 586) (commission of a criminal act reflecting adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects); and 8.4(c) (engaging in conduct involving dishonesty). Upon conclusion of the hearing, the panel made the following findings of fact and conclusions of law, together with its recommendation to this court:

"FINDINGS OF FACT

. . . .

"2.    On September 10, 2005, Pamela Johnson-Betts, the Respondent's wife was stopped by a Kansas Highway Patrol Trooper for failing to use a turn signal. At that time, she did not have proof of insurance and received a citation for that offense.

"3. After the Respondent learned that Mrs. Johnson-Betts had been stopped by the Trooper and knowing that the car was not insured, the Respondent altered a motor vehicle insurance card issued by Maryland Casualty Company for a 1976 Triumph 6 ('TR6'). The insurance card had expired in 2004. The Respondent replaced the reference to the 1976 TR6 with 2002 Honda. The Respondent changed the expiration date to make it appear as though the insurance card reflected a current insurance policy.

"4. The Respondent took the altered insurance card to Kinkos and had it laminated. The Respondent provided the altered insurance card to Mrs. Johnson-Betts, the Respondent's wife. Mrs. Johnson-Betts believed that it was a valid insurance card, as she did not know that the Respondent had altered the insurance card.

"5. On October 20, 2005, a Trooper from the Kansas Highway Patrol pulled Mrs. Johnson-Betts over for speeding. She provided the Trooper with the altered insurance card. An investigation ensued and the Respondent's misconduct came to light.

"6. The Respondent testified that he altered the insurance card because his wife was pestering him to obtain insurance. The Respondent's purpose in altering the insurance card was to appease his wife.

"7. On June 29, 2007, the Attorney General filed charges against the Respondent. The four felony charges included one count of forgery and three counts of making a false information.

"8. On July 8, 2007, the Respondent informed the Disciplinary Administrator that he had been charged in the criminal case.

"9. On December 10, 2007, the Respondent entered a plea of no contest to two counts of failure to provide motor vehicle liability insurance, class B misdemeanors.

"10. On December 21, 2007, the Court sentenced the Respondent to six months in jail, ordered the Respondent to serve 2 days in jail, and suspended the imposition of the remainder of the sentence. Additionally, the Court ordered the Respondent to pay a fine of $500 and court costs of $128. Finally, the Court placed the Respondent on probation for one year.

## "CONCLUSIONS OF LAW

"1. Based upon the Respondent's stipulation and the findings of fact, the Hearing Panel concludes as a matter of law that the Respondent violated KRPC 8.4(b) and KRPC 8.4(c), as detailed below.

"2. 'It is professional misconduct for a lawyer to . . . commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects.' KRPC 8.4(b). In this case, the Respondent admitted that he knowingly and intentionally altered an insurance card. The Respondent admitted that he did so to appease his wife. Based upon the Respondent's conduct, the Respondent was convicted of two counts of failure to provide proof of liability insurance, class B misdemeanors. The Respondent acknowledged that his action

violates KRPC 8.4(b). Accordingly, the Hearing Panel concludes that the Respondent committed criminal acts and those criminal acts reflect directly on the Respondent's honesty, trustworthiness, and fitness as a lawyer in other respects, in violation of KRPC 8.4(b).

"3. 'It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation.' KRPC 8.4(c). The Respondent admitted that he engaged in conduct that involved dishonesty when he altered the expired insurance card. As such, the Hearing Panel concludes that the Respondent violated KRPC 8.4(c).

## "AMERICAN BAR ASSOCIATION
## STANDARDS FOR IMPOSING LAWYER SANCTIONS

"In making this recommendation for discipline, the Hearing Panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"*Duty Violated*. The Respondent violated his duty to the public to maintain his personal integrity.

"*Mental State*. The Respondent knowingly violated his duty. The Respondent admitted that he had a history of depression which contributed to his pattern of procrastination. It did not appear that he is being treated for his depression.

"*Injury*. As a result of the Respondent's misconduct, the Respondent caused actual injury to his wife.

"*Aggravating or Mitigating Factors*. Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factors present:

"Prior Disciplinary Offenses. The Respondent has been previously disciplined on four occasions.

"On June 2, 1995, the Kansas Supreme Court placed the Respondent on probation for two years for having violated MRPC 1.1, MRPC 1.3, and MRPC 8.4(d). *In re Betts*, 257 Kan. 955, 895 P.2d 604 (1995).

"On January 23, 1998, the Kansas Supreme Court placed the Respondent on probation for three additional years for having violated MRPC 1.1, MRPC 1.3, MRPC 1.4, MRPC 1.15(d), MRPC 8.4(d), and Kan. Sup. Ct. R. 207. *In re Betts*, 263 Kan. 801, 953 P.2d 223 (1998).

"On July 14, 1998, the Disciplinary Administrator informally admonished the Respondent for having violated MRPC 1.1, MRPC 1.3, MRPC 1.4, and MRPC 8.4.

"On July 6, 2006, the Disciplinary Administrator informally admonished the Respondent for having violated KRPC 1.3 and KRPC 8.4.

"Dishonest or Selfish Motive. The Respondent engaged in conduct that involved dishonesty.

'Substantial Experience in the Practice of Law. The Kansas Supreme Court admitted the Respondent to practice law in 1981. At the time the Respondent engaged in misconduct, the Respondent had been practicing law for a period of 24 years. Accordingly, the Hearing Panel concludes that the Respondent had substantial experience in the practice of law at the time he engaged in the misconduct.

"Illegal Conduct. The Respondent engaged in criminal conduct and, as a result, was convicted of two charges of failure to provide motor vehicle liability insurance, class B misdemeanors.

"Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following mitigating circumstances present:

"The Present and Past Attitude of the Attorney as Shown by the Respondent's Cooperation During the Hearing and the Respondent's Acknowledgment of the Transgressions. The Respondent fully cooperated in the disciplinary process as exhibited by his complete acknowledgment of the misconduct.

"Previous Good Character and Reputation in the Community Including any Letters from Clients, Friends, and Lawyers in Support of the Character and General Reputation of the Attorney. The Respondent is an active and productive member of the bar in Topeka, Kansas. He enjoys the respect of his peers and clients and generally possesses a good character and reputation as a trial attorney.

"Imposition of Other Penalties or Sanctions. The Respondent entered a plea of no contest to two misdemeanor crimes. As a result, the Court imposed a sentence. The Respondent spent two days in jail and a year on probation, paid a fine in the amount of $500, and paid the Court costs in the amount of $128.

"Remorse. At the hearing on the Formal Complaint, the Respondent expressed genuine remorse.

"Remoteness of Prior Offenses. The discipline imposed in 1995 and 1998 is remote in time and in character to the misconduct in this case. The discipline imposed in 2006 is remote in character to the misconduct in this case.

"During the hearing, the Disciplinary Administrator suggested that Standards 5.12 and 5.13 may apply, depending on a finding that the Hearing Panel would have to make. Standard 5.12 provides:

'Suspension is generally appropriate when a lawyer knowingly engages in criminal conduct which does not contain the elements listed in Standard 5.11 and that *seriously* adversely reflects on the lawyer's fitness to practice.' (Emphasis added.)

Standard 5.13 provides:

'Reprimand is generally appropriate when a lawyer knowingly engages in any other conduct that involves dishonesty, fraud deceit, or misrepresentation and that adversely reflects on the lawyer's fitness to practice law.'

The difference between these two standards is whether the misconduct 'seriously adversely reflects on the lawyer's fitness to practice' or whether the misconduct 'adversely reflects on the lawyer's fitness to practice.'

"The Respondent's misconduct consists of altering an insurance card. The Hearing Panel accepted the Respondent's testimony that he did not intend that the insurance card would be provided to law enforcement. While the Respondent's explanation that he altered the insurance card because he did not have time to obtain insurance does not make any sense it should have taken less time to obtain insurance than it would have to alter the insurance card the Hearing Panel believes that the Respondent did not intend to defraud anyone, other than his wife, with the altered insurance card. Thus, the Hearing Panel concludes that the Respondent's misconduct adversely reflects on his fitness to practice law, but that it does not *seriously* adversely reflect on his fitness to practice law.

## "RECOMMENDATION

"The Disciplinary Administrator acknowledged that the Respondent's misconduct may fall within Standard 5.12 or Standard 5.13, depending on whether the Hearing Panel concludes that the Respondent's misconduct seriously adversely reflects on his fitness to practice. Accordingly, the Disciplinary Administrator recommended either that the Respondent be suspended from the practice of law for six months to one year or that the Respondent be censured and that the censure be published. The Respondent did not disagree with the Disciplinary Administrator's recommendation, but urged the Hearing Panel to recommend that he be censured and allowed to continue to practice law.

"The Respondent's misconduct in this case is troubling. He knowingly and intentionally altered an insurance card to make it appear as though his wife's car was insured when it was not. The Respondent offered no legitimate explanation for his conduct. The misconduct in altering the insurance card, in all likelihood, took more time than obtaining insurance would have taken. It would have been so much simpler for the Respondent to obtain insurance. The Respondent testified that his financial situation did not prevent him from obtaining insurance. But, rather, the Respondent made the conscious decision to deceive his wife by altering the insurance card.

"Another troubling factor, is the Respondent's previous disciplinary history. The Respondent has been placed on probation twice and he has been informally admonished twice. However, the Respondent's misconduct in this case is nothing like the misconduct in the previous cases.

"The Hearing Panel questioned the Respondent about his mental health history and asked whether Respondent believed depression contributed to his decision to alter the insurance card rather than call his insurance agent. The Respondent did not think depression was a factor. Yet, members of the Hearing Panel believe the Respondent's decisions were influenced to some degree by his mental health at the time.

"Standards 8.1 through 8.4 discuss when the Court should increase the severity of discipline by virtue of previous misconduct. Specifically, 8.2 provides that

'Suspension is generally appropriate when a lawyer has been reprimanded for the same or similar misconduct and engages in further acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession.'

Standard 8.2 does not apply in this case because the Respondent's previous misconduct was not the same or even similar to the misconduct in this case.

"In the opinion of the Hearing Panel, the mitigating circumstances are compelling in this case. Specifically, the Hearing Panel found it significant that the Respondent voluntarily took himself out of the practice of law for a period of approximately six months while the criminal case was pending. While voluntarily not practicing law is not a suspension from the practice of law, it had the same result. For a period of time, the Respondent did not practice law. Additionally, as a result of the criminal case, the Respondent experienced other penalties and ramifications. The Respondent spent two days in jail and a year on probation and paid a fine. The Respondent's criminal case was highlighted in the local newspaper and television news broadcasts. Thus, the Hearing Panel concludes that the matters in mitigation, including the Respondent's voluntary 'suspension' from the practice of law, the public scrutiny, and the penalties that followed his criminal conviction, are compelling.

"The mitigating circumstances, coupled with the finding that the Respondent's misconduct does not seriously reflect on his fitness to practice law, leads the Hearing Panel to unanimously recommend that the Respondent be censured by the Kansas Supreme Court and that the censure be published in the Kansas Reports. In addition to the censure, the Hearing Panel recommends that the Respondent be required to undergo an evaluation for depression by William Albott, Ph.D., comply with all recommendations for treatment and/or medication made by Dr. Albott, and provide quarterly verification to the Disciplinary Administrator that he has complied with the recommendations for a period of two years.

"Costs are assessed against the Respondent in an amount to be certified by the Office of the Disciplinary Administrator."

## DISCUSSION

In a disciplinary proceeding, this court considers the evidence, the findings of the disciplinary panel, and the arguments of the parties and determines whether violations of KRPC exist and, if they do, what discipline should be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Lober*, 288 Kan. 498, 505, 204 P.3d 610 (2009); see Supreme Court Rule 211(f) (2008 Kan. Ct. R. Annot. 313).

The respondent stipulated to the allegations of the formal complaint and filed no exceptions to panel's final hearing report set forth above. Thus, the hearing panel's final report is deemed admitted. Supreme Court Rule 212(c) (2008 Kan. Ct. R. Annot. 327).

We conclude the panel's findings of fact are supported by clear and convincing evidence and that these findings support the panel's conclusions of law. We therefore adopt those findings and conclusions. With respect to the discipline to be imposed, the panel's recommendation that the respondent be censured is advisory only and shall not prevent the court from imposing a different discipline. Supreme Court Rule 212(f). However, we have considered the careful manner in which the panel reached its recommendation. As noted by the panel, the respondent's misconduct in this case is troubling and has resulted in misdemeanor convictions for failure to provide proof of liability insurance. The respondent admits that his misconduct amounted to deceit in violation of KRPC 8.4(c). Moreover, as noted by the panel, the respondent has a history of four additional disciplinary violations, though those violations are somewhat remote in time and not of the same character as the present misconduct.

At the same time, the panel noted that the mitigating circumstances outlined in the final hearing report led to its recommendation that the respondent should be sanctioned by published censure for his misconduct. The panel further recommended that the respondent be required to undergo an evaluation for depression by William Albott, Ph.D.; to comply with all recommendations for treatment and/or medication made by Dr. Albott; and to provide quarterly verification to the Disciplinary Administrator that he has complied with the doctor's recommendations for a period of 2 years. During oral argument, the respondent indicated that he willingly accepted this recommendation. Based upon the record before us, including the arguments before this court, we conclude that the recommendations of the panel as to sanctions are appropriate. A minority of this court would impose a more severe sanction.

CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that respondent, Wendell Betts,

be and he is hereby disciplined by published censure in accordance with Supreme Court Rule 203(a)(3) (2008 Kan. Ct. R. Annot. 266) for violations of KRPC 8.4(b) and (c).

IT IS FURTHER ORDERED that respondent comply with the recommendation of the hearing panel that he be required to undergo an evaluation for depression by William Albott, Ph.D.; to comply with all recommendations for treatment and/or medication made by Dr. Albott; and to provide quarterly verification to the Disciplinary Administrator that he has complied with the doctor's recommendations for a period of 2 years.

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to the respondent and that this opinion be published in the official Kansas Reports.