IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 127,056

In the Matter of JASON P. WISKE,
*Respondent.*

ORIGINAL PROCEEDING IN DISCIPLINE

Original proceeding in discipline. Oral argument held February 1, 2024. Opinion filed March 15, 2024. Ninety-day suspension stayed pending completion of a 12-month period of probation.

*Alice Walker,* Deputy Disciplinary Administrator, argued the cause, and *Gayle B. Larkin,* Disciplinary Administrator, was with her on the formal complaint for the petitioner.

*Peggy Wilson,* of Wichita, argued the cause, and *Jason P. Wiske,* respondent, argued the cause pro se.

PER CURIAM: This is an attorney discipline proceeding against Jason P. Wiske, of Pittsburg, who was admitted to practice law in Kansas in September 1997.

On September 18, 2023, the Disciplinary Administrator's office filed a formal complaint against Wiske alleging violations of the Kansas Rules of Professional Conduct.

The parties entered into a summary submission agreement under Supreme Court Rule 223 (2023 Kan. S. Ct. R. at 277). Wiske admitted that he violated the Kansas Rules of Professional Conduct (KRPC)—specifically KRPC 1.1 (2023 Kan. S. Ct. R. at 327) (competence), KRPC 1.3 (2023 Kan. S. Ct. R. at 331) (diligence), KRPC 3.2 (2023 Kan. S. Ct. R. at 390) (expediting litigation), and KRPC 8.4(d) (2023 Kan. S. Ct. R. at 433) (conduct prejudicial to the administration of justice). The parties also stipulated to the

1

content of the record, the findings of fact, the conclusions of law, and the applicable aggravating and mitigating circumstances. They additionally agreed to waive a formal hearing and to recommend staying the sanction of a 90-day suspension, with Wiske being placed on probation for 12 months under terms specified in the Summary Submission Agreement. See Rule 223(b).

The chair of the Board for Discipline of Attorneys approved the summary submission and cancelled a hearing on the formal complaint. See Supreme Court Rule 223(e). The summary submission was filed with this court for hearing.

Before us, the parties recommend a finding of misconduct and the imposition of a sanction of a 90-day suspension from the practice of law. They also recommend the suspension be stayed and the respondent be placed on probation for 12 months.

FACTUAL AND PROCEDURAL BACKGROUND

The relevant portions of the Summary Submission Agreement follow.

"*Findings of Fact: Petitioner and respondent stipulate and agree that respondent engaged in the following misconduct as follows:*

. . . .

"4. In 2021, the respondent entered his appearance to represent D.T. in an appeal from the Crawford County District Court's termination of D.T.'s parental rights (Case No. 2017-JC-155).

"5. On January 23, 2021, the respondent filed a notice of appeal on behalf of D.T.

"6.      Pursuant to Supreme Court Rule 2.04 (docketing an appeal) (2023 Kan. S. Ct. R. at 15), '[n]o later than 60 days after a notice of appeal is filed in a district court, the appellant must complete or obtain and file with the clerk of the appellate courts: (A) the docketing statement required by Rule 2.041' and other documents. The docketing deadline for the appeal was March 24, 2021.

"7.      The respondent did not file a docketing statement, or any other documents on behalf of D.T. by March 24, 2021.

"8.      On November 1, 2021, the State filed a motion to dismiss the appeal in Crawford County District Court, noting that '[t]o date, nothing has been filed with the Court of Appeals.'

"9.      The motion to dismiss was granted and the appeal was dismissed on January 6, 2022.

"10.      On February 7, 2022, the respondent filed a motion to reinstate the appeal indicating that he had 'heard that filing deadlines had been suspended due to the COVID pandemic, and, additionally counsel for Appellant has had health issues and concerns since late January which caused counsel for Appellant to not perfect the appeal in his case.'

"11.      The respondent's motion was granted. In its order, the court of appeals instructed the appeal to be docketed immediately. A brief deadline was set for April 13, 2022.

"12.      The Court of Appeals (COA) issued an order on March 14, 2022, which stated the case would be expedited and that without a 'showing of exceptional circumstances, no extensions of time for filing briefs will be granted.'

"13.      On April 21, 2022, after no brief had been filed by the respondent, the COA issued an order instructing the respondent to 'file a brief by May 5, 2022, or the appeal will be dismissed without further notice for failure to comply with the rules of the court.'

"14.     On May 12, 2022, the COA issued an order of dismissal stating the respondent 'has filed no brief and has not responded to this court's order.'

"15.     Following the dismissal by the COA, Chelsey Langland, Director of Special Projects at the Kansas COA submitted a complaint to the Office of the Disciplinary Administrator (ODA).

"16. In his attorney response to the complaint, the respondent self-reported failures to properly file appeals in two additional cases dealing with termination of parental rights in Crawford County District Court. The respondent reported diligence issues in representing A.H. in Case No. 2017-JC-000172 (Appellate Case No. 125,199); and in representing A.F. in four CINC cases: 2019-JC-000033-G, 2019-JC-00003[5]-G, 2019-JC-000034-G, and CRG-2021-JC-000066.

*"Representation of A.H. (125,199)*

"17.     The respondent represented A.H., natural father whose parental rights were terminated on February 1, 2021.

"18.     On March 25, 2021, the respondent filed a notice of appeal on behalf of A.H.

"19.     In February 2022, the State filed a motion to dismiss the appeal. The motion was granted, and the appeal was dismissed.

"20.     On May 31, 2022, the respondent filed a motion to reinstate the appeal, again claiming that he had 'heard that filing deadlines had been suspended due to the COVID pandemic, and additionally counsel for Appellant has had health issues and concerns since late January which caused counsel for Appellant to not perfect the appeal in his case.'

4

"21.    On June 9, 2022, the motion to reinstate was granted and the matter was docketed immediately. The respondent was given a deadline of July 19, 2022, to file a brief.

"22.    On June 15, 2022, the ODA received the respondent's attorney response to the pending disciplinary complaint. In the response, the respondent noted that 'the Court of Appeals did grant a motion to docket the appeal out of time on June 9, 2022, and the appellate process is expediated.'

"23.    The COA issued an order on July 14, 2022, expediting the case and stating that '[i]n the absence of a showing of exceptional circumstances, no extensions of time for filing briefs will be granted.'

"24.    On July 15, 2022, the respondent was interviewed by the disciplinary investigator. The respondent indicated that he thought it was best for someone else to represent A.H., and therefore had filed a motion to withdraw in district court. He did indicate that if it was not granted, he would be able to handle the appeal.

"25.    The respondent did not file a brief by July 19, 2022. The respondent did not file any other motion or request for an extension of time with the COA based on his request to withdraw in district court.

"26.    On July 20, 2022, Ms. Langland notified the disciplinary investigator that the respondent had not filed his brief and that the court had not heard anything from him.

"27.    On July 21, 2022, the COA issued an order noting that no brief had been filed and ordering the respondent to 'file a brief by August 11, 2022, or the appeal will be dismissed without further notice for failure to comply with the rules of the court.'

"28.    The respondent filed a brief on August 11, 2022, avoiding a dismissal of the appeal. The case was ultimately dismissed on the merits.

5

*"Representation of A.F.*

"29.    The respondent represented A.F. in four separate CINC cases where her parental rights were terminated in January 2022.

"30.    The respondent filed a notice of appeal in each case. However, due to a clerical mistake, the notice of appeals did not have the required verification.

"31.    The State filed a motion to dismiss the appeals, which was granted by the District Court on June 6, 2022.

"32.    In his response to the disciplinary complaint, the respondent indicated he was 'attempting to get the notarized docketing statement back from [A.F.] so that [he] can docket the appeal with a motion to reinstate the appeal.' Although the respondent made numerous attempts by email to obtain the docketing statement back from [A.F.] he did not obtain one prior to withdrawing from the case on July 1, 2022.

"33.    Pursuant to Kansas Supreme Court Rule 5.051 (dismissal of appeal by district court) (2023 Kan. S. Ct. R. at 33) the respondent had 30 days from the entry of the order to file a motion for reinstatement.

"34.    On July 1, 2022, the respondent withdrew from representation of A.F. The respondent had not filed a motion to reinstate the appeal.

"35.    On July 13, 2022, another attorney was appointed to represent A.F. The attorney attempted to file the appeal on behalf of A.F. A hearing was set, at which A.F. did not appear and the district court concluded the time for appeal had lapsed and the appeal could not be docketed.

"Conclusions of Law: Petitioner and respondent stipulate and agree that respondent violated the following Supreme Court Rules and Kansas Rules of Professional Conduct, respondent engaged in misconduct as follows:

6

"36.    KRPC 1.1 (competence) (2023 Kan. S. Ct. R. at 327) regarding D.T. and A.F.;

"37.    KRPC 1.3 (diligence) (2023 Kan. S. Ct. R. at 331) regarding D.T. and A.F.;

"38.    KRPC 3.2 (expediting litigation) (2023 Kan. S. Ct. R. at 390) regarding DT, AH and A.F.;

"39.    KRPC 8.4(d) (conduct prejudicial to the administration of justice) (2023 Kan. S. Ct. R. at 433).

"Applicable Aggravating and Mitigating Circumstances:

"40.    Aggravating circumstances include:

"a. *Prior disciplinary offenses*: DA 13,506: Diversion for violations of KRPC 1.3 (diligence) and KRPC 1.4 (communication).

"i. Facts:  On June 17, 2019, the respondent was appointed to represent D.Y. in a K.S.A. 60-1507 proceeding. On July 14, 2019, the respondent entered a limited entry of appearance in the matter to allow him to review the file. D.Y. sent letters to the respondent on August 22, 2019, November 13, 2019, and February 6, 2020. The respondent did not respond to any of these correspondences.  On March 24, 2020, D.Y. filed a motion with the District Court seeking a new attorney given that the respondent had taken no action on the matter. On March 30, 2020, the Office of the Disciplinary Administrator (ODA) received a complaint from D.Y. In response to the docketed complaint, the respondent acknowledged his lack of action on D.Y.'s case, explained health conditions and a heavy case load contributed to the misconduct, and provided a copy of his motion to withdraw from D.Y.'s case.  The respondent requested to be considered for diversion.

7

"ii. Diversion Agreement: On November 3, 2020, the respondent was placed on diversion stipulating his conduct violated KRPC 1.3 and KRPC 1.4. The period of diversion was for twelve (12) months. The terms of diversion included:

"1. The respondent was to complete five (5) hours of additional Continuing Legal Education. Three (3) hours were to be from course instruction about Law Practice Management, and two (2) hours were to be on Attorney Well-Being.

"2. The respondent was to read and report to the ODA on one book regarding Law Practice Management.

"3. The respondent was to review law office practices using the Self-Audit Check List provided by the ODA and return a completed copy.

"4. The respondent was to enter into a Monitoring Agreement and authorization for disclosure and release of information with KALAP.

"iii. In November 2021, the respondent had not completed the terms of diversion, therefore he requested an extension. A 90-day extension was granted.

"iv. In January 2022, the respondent provided proof of completion of the terms of diversion.

"v. Although the diversion was completed in January 2022, the paperwork to formally dismiss the diversion was not processed until January 2023.

"b. *A pattern of misconduct*: The respondent lacked diligence in three cases, resulting in either delay in resolution on appeal or dismissal of the appeal.

"c. *Multiple offenses*: The respondent violated KRPC 1.1, KRPC 1.3, KRPC 3.2, and KRPC 8.4(d).

8

"d. *Substantial experience in the practice of law*: The respondent has been licensed to practice law since 1997.

"41.     Mitigating circumstances include:

"a. *Absence of a dishonest or selfish motive*: The respondent's misconduct arose out of a combination of poor law practice management coupled with mental and physical health diagnosis that were not being properly managed. There is no evidence the respondent acted in a dishonest or selfish manner.

"b. *Personal or emotional problems if such misfortunes have contributed to violation*: In approximately 2004, the respondent was diagnosed with Bi-polar disorder and depression, requiring medication management for treatment. The respondent is currently in counseling and being treated for depression. In December 2016, the respondent suffered a stroke and has made a full physical recovery. The respondent has further been diagnosed with diabetes and at the time of the misconduct leading to this case, was not properly caring for himself. This resulted in a lack of energy and lack of focus, worsening his depression. In January and February of 2022, the respondent suffered from COVID like symptoms, and twisted his knee in March 2022 requiring medication and time off work. The respondent reported feeling overwhelmed and stressed with his workload through May 2022.

"c. *The present and past attitude of the attorney as shown by their cooperation during the proceeding and their full and free acknowledgment of the transgressions*: The respondent provided a written response to the investigator in this case. In the response, the respondent acknowledged his lack of diligence in the representation of D.T. and self-reported similar conduct in two other cases. He further indicated he had relinquished his contract with Crawford County to represent parents in child in need of care cases. The respondent admitted to the misconduct as outlined in the formal complaint. The respondent reports working with his therapist and his primary

9

car[e] physician to manage both his mental and physical health. The respondent has implemented new practices, such as a different calendaring method, to improve his case management. Further, the respondent has begun working with a local attorney, John Mazurek, on a probation plan to improve his law practice management, assist him in managing his case load, and helping to keep him accountable for his physical and mental health.

"d. *Previous good character and reputation in the community*: The respondent submitted two letters attesting to his good character and reputation.

"e. *Remorse*: The respondent has accepted responsibility for his actions and expressed genuine remorse.

"Recommendations for Discipline:

"42. Petitioner and respondent jointly recommend respondent be suspended from the practice of law for 90 days. The parties further recommend the suspension be stayed and the respondent be placed on probation for a period of twelve (12) months.

"43. Terms of probation shall include:

"a. Compliance with Rules of Professional Conduct:

"i. The respondent shall not engage in conduct that violates the Rules of Professional Conduct;

"ii. Receipt of a complaint by the Office of the Disciplinary Administration ('ODA') during the probation term alleging that the respondent has violated the Rules of Professional Conduct does not, in itself, constitute a violation of the terms of probation; and

"iii. In the event that the ODA receives a complaint during the respondent's participation in the probation program or otherwise opens or commences a disciplinary investigation, the term of the probation shall be extended until

10

such charge has been investigated and a determination made by the ODA or regional disciplinary committee regarding disposition of such matter.

"b.  Proposed Supervisor**:** John G. Mazurek is 58 years old and a full-time lawyer in private practice located in Pittsburg Kansas and has practiced law in excess of 32 years. Mr. Mazurek is a Kansas lawyer in good standing. He graduated from Washburn University School of Law in 1991. Mr. Mazurek has also been the City Prosecutor/Legal Advisor for the City of Pittsburg, Kansas since 1997. Several years ago, local attorneys and Mr. Mazurek formed their own version of KALAP—helping attorneys when in need. Mr. Mazurek and the respondent have known each other for approximately 25 years.

"c.  Conditions of Probation:

"i.  The conditions of the probation shall be satisfied prior to termination of the probation. The conditions are:

"ii.  The respondent's practice will be supervised by John G. Mazurek ('Supervising Attorney'), a Kansas licensed attorney, in good standing, practicing in Crawford County, Kansas.

"iii.  The respondent shall allow Supervising Attorney access to his files, calendar, and case management system.

"iv.  The respondent shall comply with any requests made by the Supervising Attorney.

"v.  During the twelve (12) months of supervision, the respondent shall meet with the Supervising Attorney monthly. Said meetings shall be face-to-face, by phone or via Zoom.

11

"vi.   The respondent will maintain an accurate report of all open and active cases with reports to be provided to the Supervising Attorney during each monthly meeting.

"vii.   The respondent will maintain a case file in either his case management system or by hard files and maintain case notes and other records in each file.

"viii.   The respondent will respond to client communications within a week or less.

"ix.   When the respondent is anticipated to be unavailable to respond to client emails or phone calls for more than a week, he will use the out of office function on his email to notify clients of the duration of his absence.

"x.   The respondent will update the closure status of cases in his document management system not less frequently than monthly.

"xi.   The Supervising Attorney shall conduct an immediate and detailed audit of the respondent's files.

"xii.   Thereafter, quarterly, Supervising Attorney shall make a report regarding same to the Disciplinary Administrator's Office and a final report accompanied by an affidavit stating that the respondent has complied with all terms of probation.

"xiii.   Should Supervising Attorney discover any violations of the Kansas Rules of Professional Conduct, he shall include such information in each report to the Disciplinary Administrator's Office in order for the Disciplinary Administrator's Office to investigate these violations.

"xiv.   Supervising Attorney shall provide the respondent with a copy of each audit report and each report to the Disciplinary Administrator's Office.

"xv.  The respondent shall follow all recommendations of his Supervising Attorney and shall immediately correct all deficiencies noted in the periodic reports and audit reports.

"xvi.  The respondent has implemented a new calendaring system for maintaining deadlines for case management. The Supervising Attorney shall aid in prioritizing tasks and monitoring case progress in general.

"xvii.  Supervising Attorney, in consultation with the respondent, shall determine the number of active cases that can be handled in a competent manner by the respondent while giving his clients a proper defense.

"xviii.  Supervising Attorney shall determine if the Office Manager/ administrative assistant could aid the respondent further in the performance of his duties to include the opening of mail, reading and responding to emails, setting up a tickler file that includes court dates and response dates, if not already in place.

"xix.  The respondent has been under the care of a psychologist, Blake Webster, Ph.D. and participated in counseling already at the time of the inception of probation and will continue his current treatment. Specifically, the respondent will comply with the treatment recommendations and counseling program prescribed by Dr. Webster. The respondent shall remain under the care of Dr. Webster for depression and anxiety or any other mental health issues that are identified throughout the term of his probation. The respondent will also sign releases so that any records can be provided to his Supervising Attorney and/or to the Disciplinary Administrator's Office at any time. The respondent will provide documentation confirming his compliance with treatment recommendations as directed by his Supervising Attorney or the assigned Deputy Disciplinary Administrator. Prior to any change of treatment providers, Respondent shall obtain the approval of his Supervising Attorney.

"xx. The respondent has also been under the care of Eric Vonholten, D.O., an internal medicine specialist and has participated in treatment for his diabetes already at the time of the inception of probation and will continue his current treatment. Specifically, [t]he respondent will comply with the treatment recommendations prescribed by Dr. Vonholten. The respondent shall remain under the care of Dr. Vonholten, for diabetes or other health issues that are identified throughout the term of his probation. The respondent shall comply with any medication and treatment directives. He will also sign releases so that any records can be provided to his Supervising Attorney and/or to the Disciplinary Administrator's Office at any time. The respondent will provide documentation confirming his compliance with treatment recommendations as directed by his Supervising Attorney or the assigned Deputy Disciplinary Administrator. Prior to any change of treatment providers, the respondent shall obtain the approval of his Supervising Attorney.

"xxi. Supervising Attorney shall be acting as an officer and agent of the Court while supervising the probation of the respondent and during the monitoring process of the legal practice of the respondent. The Supervising Attorney shall be afforded all immunities by Supreme Court Rule 238 during the course of this activity.

"xxii. The respondent shall continue to cooperate with the Disciplinary Administrator's Office. If the Disciplinary Administrator requires any further information, the respondent shall timely provide said information.

"xxiii. The respondent shall not violate the provisions of his probation or the Kansas Rules of Professional Conduct. In the event the respondent violates any of the terms of his probation or any of the terms of the Kansas Rules of Professional Conduct during the probationary period, the respondent shall immediately report such violations to his Supervising Attorney and the Disciplinary Administrator.

14

"xxiv. The respondent shall pay the costs in an amount to be certified by the Disciplinary Administrator's Office.

"xxv. To further protect the public and the respondent's clients, The respondent shall maintain malpractice insurance in amount of not less than $100,000 per occurrence and an aggregate amount of not less than $300,000. Respondent shall provide the Supervising Attorney with proof of insurance within thirty (30) days of the date of commencement of the probation term.

"xxvi. For additional protection to the respondent's clients, in the event of a death, personal problem, or natural disaster that prohibits the respondent from practicing law, Supervising Attorney has agreed to serve as the 'assisting attorney' to finish up and close the respondent's practice and act on behalf of the respondent."

## DISCUSSION

In a disciplinary proceeding, we consider the evidence and the parties' arguments and determine whether KRPC violations exist and, if they do, the appropriate discipline. Attorney misconduct must be established by clear and convincing evidence. *In re Spiegel*, 315 Kan. 143, 147, 504 P.3d 1057 (2022); see Supreme Court Rule 226(a)(1)(A) (2023 Kan. S. Ct. R. at 281). We have defined clear and convincing evidence as "evidence that causes the factfinder to believe that 'the truth of the facts asserted is highly probable.'" 315 Kan. at 147 (quoting *In re Lober*, 288 Kan. 498, 505, 204 P.3d 610 [2009]).

Respondent Wiske had adequate notice of the formal complaint, to which he filed an answer. He waived formal hearing after entering into a summary submission agreement. In this agreement, the parties agreed they would not take exceptions to the findings of facts and conclusions of law. By Supreme Court rule, the parties thus admitted the factual findings and conclusions of law in the summary submission. See Supreme Court Rule 228(g)(1) (2023 Kan. S. Ct. R. at 288).

15

We adopt the findings of fact and conclusions of law in the summary submission, which considered with the parties' stipulations, establish by clear and convincing evidence that Wiske's conduct violated KRPC 1.1, KRPC 1.3, KRPC 3.2, and KRPC 8.4(d).

The parties' summary agreement recommending discipline is advisory only and does not prevent us from imposing a greater or lesser discipline. Kansas Supreme Court Rule 223(f) (2023 Kan. S. Ct. R. at 279). Here, after full consideration of the stipulated findings of facts and conclusions of law, we adopt the joint recommendation of a 90-day suspension that is stayed contingent on the respondent's successful completion of a 12-month probationary period.

CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that Jason P. Wiske's license to practice law in Kansas is suspended for 90 days but that suspension is stayed contingent upon the respondent's successful completion of a 12-month period of probation that begins on the filing of this opinion. Supreme Court Rule 225(a)(2) (2023 Kan. S. Ct. R. at 281). The respondent's probation will be subject to the terms in the plan of probation set out in the parties' Summary Submission Agreement. No reinstatement hearing is required upon the respondent's successful completion of probation.

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to the respondent and that this opinion be published in the official Kansas Reports.